SBA, INC., BELLSOUTH CAROLINA PCS, L.P. D/B/A BELLSOUTH MOBILITY, DCS AND PAUL TESCIONE, PETITIONERS v. CITY OF ASHEVILLE CITY COUNCIL, RESPONDENT

No. COA99-1344

(Filed 19 December 2000)

**1. Zoning— denial of conditional use permit—review by superior court**

A city council acted as a quasi-judicial body in denying an application for a conditional use permit; review by the superior court of that decision is as an appellate court rather than a fact finder. The provisions of the Administrative Procedure Act are highly pertinent to the superior court's review.

**2. Zoning— conditional use permit—telecommunications tower—city code requirements**

A city council's findings were sufficient to support its conclusions that petitioners failed to satisfy all of the general requirements of the city code for a conditional use permit, and the findings were squarely based on evidence presented at the hearing. There was no error in the council's interpretation and application of the code; under the city code, respondent must conduct a hearing and make findings with respect to general requirements as well as technical compliance in order to approve a conditional use permit.

**3. Zoning— conditional use permit—telecommunications tower—sufficiency of evidence**

Although petitioners who had been unsuccessful in obtaining a conditional use permit for a telecommunications tower argued that the vast amount and perceived quality of their evidence required the issuance of the permit, they failed to carry their burden of meeting all requirements for issuance of the permit under the City Code. The role of the Court of Appeals is not to sift and determine facts; the record as a whole in this case contains sufficient relevant evidence for a reasonable person to support the conclusion that petitioners failed to meet all the requirements.

**4. Zoning— conditional use permit—telecommunications tower—federal act**

The denial of a conditional use permit for a telecommunications tower did not violate the federal Telecommunications Act of 1996. Respondent-city council is the body empowered by law to determine whether to issue the permit and, upon review of the whole record, there is adequate evidence under federal or state law to support the conclusion that petitioners failed to satisfy all City Code requirements.

**5. Zoning— conditional use permit—telecommunications tower—prohibition of wireless services—discrimination among providers**

Respondent-city council's denial of a conditional use permit for a telecommunications tower did not violate the federal Telecommunications Act by prohibiting the provision of personal wireless services and unreasonably discriminating among providers of functionally equivalent services. Petitioners failed to cite any evidence, other than the denial of their permit, to support their contention, and their own evidence establishes that their intent was to fill a gap and improve existing coverage. Moreover, there was no evidence that denial of this conditional use permit operated to discriminate among functionally equivalent providers.

Appeal by petitioners, SBA, Inc. and Paul Tescione, from order entered 3 August 1999 by Judge Timothy L. Patti in Buncombe County Superior Court. Heard in the Court of Appeals 9 October 2000.

SBA, INC. v. CITY OF ASHEVILLE CITY COUNCIL

[141 N.C. App. 19 (2000)]

*Lynch, Eatman & Twiddy, L.L.P., by Katherine B. Wilkerson and Jerome R. Eatman, Jr.; The Law Offices of Thomas R. Gladden, Jr., by Thomas R. Gladden, Jr. for petitioners-appellants.*

*City of Asheville, by City Attorney Robert W. Oast, for respondent-appellee.*

FULLER, Judge.

Petitioners SBA, Inc. and Paul Tescione appeal an order affirming the decision of respondent City of Asheville City Council denying the issuance of a conditional use permit ("CUP") for the construction of a telecommunications tower. On 12 June 1998 petitioners filed with respondent an application for a CUP to construct a 175-foot telecommunications tower on property leased partially by petitioner SBA and partially by Tescione. Petitioners' application proposed the tower be constructed in a CB-II "Community Business" zoning district on Merrimon Avenue in Asheville.

Petitioners' application package was reviewed by the City's Planning Department and Technical Review Committee ("TRC"), which reviews plans for proposed uses to ensure compliance with applicable regulations. On 27 October 1998 the TRC recommended approval of petitioners' application, subject to several conditions. Petitioners submitted additional information in response to the recommendation, and a public hearing before respondent was scheduled for 10 November 1998. At the hearing, petitioners submitted their application package which included various reports and maps and other information requested by the Planning Department and TRC. In addition, petitioners presented expert testimony to support its position that respondent should issue the CUP.

The City submitted to respondent a Staff Report which incorporated the findings of the Planning Department and TRC regarding the proposal's technical compliance with regulations. Despite the TRC's recommendation for approval, the Staff Report indicated various concerns regarding the tower's construction, including: that petitioners' real estate appraisal information did not adequately address the effects of the proposed tower on the value of adjoining properties; that the average height of neighboring structures did not exceed 40 feet; that part of the required landscaping buffer would be located outside the boundary of the property covered by petitioner SBA's lease; and that the potential for alternative sites or the use of stealth

technology had not been adequately explored. In addition, twelve members of the public, many of whom reside in areas surrounding the proposed site, raised concerns regarding the proposed tower, and expressed uniform opposition to construction of the tower at the proposed location.

At the hearing's conclusion, respondent voted unanimously to deny petitioners' application, and an order was entered on 24 November 1998. Petitioners appealed, and on 3 August 1999 the superior court affirmed denial of the petition, finding respondent: (1) correctly interpreted and applied all relevant law; (2) followed all correct procedures; (3) based its findings on sufficient evidence which in turn supported its conclusions of law; and (4) did not act arbitrarily or capriciously. Petitioners appeal.

---

On appeal, petitioners assert five bases on which the superior court erred in upholding respondent's denial of petitioners' application for a CUP: (1) respondent committed errors of law in interpreting and applying various sections of the Asheville City Code; (2) respondent's findings were not supported by competent, material, and substantial evidence, its conclusions of law were erroneous, and its decision was arbitrary and capricious; (3) respondent failed to follow correct statutory and Asheville City Code procedures for consideration of petitioners' application; (4) respondent's denial of the CUP violated the Telecommunications Act of 1996 in that it was not based on substantial evidence; and (5) respondent's decision had the effect of prohibiting personal wireless services in violation of the Telecommunications Act of 1996, and unreasonably discriminated among providers of functionally equivalent services.

[1] Respondent, in its consideration of petitioners' application for a CUP, acted as a quasi-judicial body. *See Sun Suites Holdings, LLC v. Board of Aldermen of Town of Garner*, 139 N.C. App. 269, 271, 533 S.E.2d 525, 527 (2000) (citation omitted). As such, respondent's denial of the CUP is subject to review by the superior court sitting as an appellate court and not a trier of fact. *Id.* (citing N.C. Gen. Stat. § 160A-381(c) 1999). The provisions of the Administrative Procedure Act are highly pertinent to the superior court's review of such a decision. *Id.* (citation omitted). Thus, the role of the superior court in reviewing a city council decision regarding an application for a CUP has been defined as follows:

"(1)  Reviewing the record for errors in law,

(2)  Insuring that procedures specified by law in both statute and ordinance are followed,

(3)  Insuring that appropriate due process rights of a petitioner are protected including the right to offer evidence, cross-examine witnesses, and inspect documents,

(4)  Insuring that decisions of town boards are supported by competent, material and substantial evidence in the whole record, and

(5)  Insuring that decisions are not arbitrary and capricious."

*Clark v. City of Asheboro*, 136 N.C. App. 114, 118, 524 S.E.2d 46, 49 (1999) (quoting *Concrete Co. v. Board of Commissioners*, 299 N.C. 620, 626, 265 S.E.2d 379, 383 (1980)).

This Court's task on review of the superior court's order is twofold:  " '(1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly.' " *Pisgah Oil Co. v. Western N.C. Reg'l Air Pollution Control Agency*, 139 N.C. App. 402, 405, 533 S.E.2d 290, 293 (2000) (quoting *Amanini v. N.C. Dept. of Human Resources*, 114 N.C. App. 668, 675, 443 S.E.2d 114, 118-19 (1994)).

I.

[2] By their first assignment of error, petitioners allege respondent committed errors of law in failing to properly interpret and apply relevant sections of the Asheville City Code ("City Code"). Petitioners allege respondent erred in its application of City Code § 7-16-2, which enumerates both general criteria for the issuance of a CUP and specific requirements regarding transmission towers, and § 7-5-5, which sets forth procedures for review of a CUP application. When a party alleges error of law in a city council's determination regarding a conditional or special use permit, the reviewing court conducts a *de novo* review. *C.C. & J. Enter. v. City of Asheville*, 132 N.C. App. 550, 552, 512 S.E.2d 766, 769 (citation omitted). Petitioners do not allege error in the superior court's application of the correct standard, and we therefore proceed to application of the *de novo* standard of review.

Petitioners argue they produced substantial and material evidence to satisfy all City Code requirements, and thus, respondent

erred in denying issuance of the CUP. In support of their argument, petitioners cite numerous documents submitted to the TRC which establish compliance with City Code technical requirements for transmission towers. Indeed, respondent concedes petitioners' evidence satisfies technical requirements for all telecommunications towers set forth in § 7-16-2(d)(3), and respondent's order contains findings to this effect. However, under § 7-5-5(e) of the City Code, respondent must conduct a hearing and make findings with respect to general requirements as well as technical compliance in order to approve a CUP.

Section 7-16-2(c) of the City Code sets forth seven general requirements for approval of a CUP. In order to approve the issuance of a CUP, § 7-16-2(c) requires that respondent determine all of the following issues based on the evidence received at a public hearing:

(1) That the proposed use or development of the land will not materially endanger the public health or safety;

(2) That the proposed use is reasonably necessary for the public health or general welfare, such as by enhancing the successful operation of the surrounding area in its basic community functions or by providing an essential service to the community or region;

(3) That the proposed use or development of the land will not substantially injure the value of adjoining or abutting property;

(4) That the proposed use or development of the land will be in harmony with the scale, bulk, coverage, density, and character of the area or neighborhood in which it is located;

(5) That the proposed use or development of the land will generally conform with the comprehensive plan and other official plans adopted by the city;

(6) That the proposed use is appropriately located with respect to transportation facilities, water supply, fire and police protection, waste disposal, and similar facilities; and

(7) That the proposed use will not cause undue traffic congestion or create a traffic hazard.

City Code § 7-16-2(c).

In the present case, respondent heard evidence, pro and con, at the public hearing and considered the Staff Report. Respondent

found the vicinity around Merrimon Avenue to be a mixture of both community businesses, institutional and residential zoning; that "[t]here are substantial and well-established residential areas on either side of Merrimon Avenue in the vicinity of the Subject Property"; and that "[t]he proposed tower would be visible from many of the homes in these areas." Nearby residents testified in opposition to the proposed tower, and respondent found the tower's 175-foot height would more than quadruple the average height of buildings in the area.

Respondent further found part of the landscaping and buffering around the site would "be located outside of the property to be leased and occupied by the tower." Moreover, respondent determined that other than petitioners' contention of the financial difficulty of locating the tower elsewhere, there was no evidence regarding technical feasibility of other sites, or the use of stealth technology and other means of minimizing tower visibility by hiding antennas in or on other structures. Respondent also determined petitioners' computerized coverage models showed significant gaps in coverage would continue to exist even if the proposed tower were constructed.

Based on these findings, respondent concluded that petitioners' application failed to meet requirements set forth in subsections (2), (3), and (4) of § 7-16-2(c). Petitioners' lack of evidence as to whether the tower would adequately cover existing gaps, and as to the technical infeasibility or unavailability of other potential sites lead respondent to conclude petitioners did not show the proposed tower was reasonably necessary for the general welfare and would enhance successful operation of the surrounding area. Respondent further concluded petitioners had not carried their burden of showing the value of adjoining or abutting property would not be substantially injured, as required by subsection (3). Although petitioners presented evidence regarding the effect of telecommunications towers on the value of property in other parts of the city, petitioners did not produce evidence regarding properties adjacent to the proposed site, nor any evidence regarding the effects of any existing tower near or adjacent to one of the neighborhoods at issue.

In addition, respondent determined petitioners failed to show the proposed use of the land would be in harmony with the scale, bulk, and character of the area or neighborhood, as required by § 7-16-2(c)(4). Although the proposed location was zoned CB-II, respondent concluded the impact of the proposed tower would be felt primarily by surrounding residential areas; that the tower would

exceed by more than four times the maximum permitted height for a CB-II zone; and that the tower would far exceed the average 40-foot height of all existing structures along Merrimon Avenue and nearby residential areas.

Under the City Code, petitioners had to show that the general requirements of § 7-16-2(c) were met, as well as technical compliance. Respondent's findings of fact were squarely based on evidence presented at the hearing, and its findings are sufficient to support its conclusions of law that petitioners failed to satisfy all general requirements of § 7-16-2(c) for issuance of a CUP. We find no error of law in respondent's interpretation and application of this provision, and likewise discern no error in the interpretation and application of § 7-5-5. The record reflects the procedures of § 7-5-5 were followed. Petitioners have failed to allege any specific error in its interpretation or application. This assignment of error is overruled.

II.

[3] Petitioners next contend respondent's findings were not supported by competent, material, and substantial record evidence, its conclusions were in error, and its decision denying petitioners' application was arbitrary and capricious. Petitioners do not contend the superior court erred in applying the correct standard of review, and we therefore do not address this issue. Instead, petitioners argue at length that the vast amount and perceived quality of its evidence required issuance of the CUP. However, a correct analysis of these assignments of error does not turn upon the volume of evidence submitted by petitioners.

Rather, when sufficiency of the evidence is challenged or when a decision by a city council denying a CUP is alleged to have been arbitrary or capricious, the reviewing court must employ the whole record test. *C.C. & J. Enter.*, 132 N.C. App. at 552, 512 S.E.2d at 769 (citation omitted). " 'The 'whole record' test requires the reviewing court to examine all competent evidence (the 'whole record') in order to determine whether the agency decision is supported by 'substantial evidence.' ' " *Pisgah Oil*, 139 N.C. App. at 405, 533 S.E.2d at 292-93 (quoting *Amanini*, 114 N.C. App. at 674, 443 S.E.2d at 118). Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Dialysis Care of N.C. v. N.C. Dep't of Health & Human Servs.*, 137 N.C. App. 638, 646, 529 S.E.2d 257, 261 (2000) (quoting *Meads v. N.C. Dep't of Agric.*, 349 N.C. 656, 663, 509 S.E.2d 165, 170 (1998) (citations omit-

ted)). The reviewing court should not replace the council's judgment as between two reasonably conflicting views; "[w]hile the record may contain evidence contrary to the findings of the agency, this Court may not substitute its judgment for that of the agency." *Id.* (citation omitted).

Moreover, when an applicant for a special or conditional use permit produces competent, material, and substantial evidence of compliance with all ordinance requirements, the applicant has made a *prima facie* showing of entitlement to a permit. *C.C. & J. Enter.*, 132 N.C. at 552, 512 at 769 (citations omitted). Thereafter, denial of the permit must be based upon contrary findings supported by competent, material, and substantial evidence appearing in the record. *Id.*

In the present case, as noted above, petitioners failed to carry their burden of meeting *all* requirements for issuance of a CUP under the City Code. Thus, petitioners did not establish a *prima facie* case of entitlement to the CUP, and the proper focus is simply whether the record as a whole contains such relevant evidence as a reasonable mind might find adequate to support the conclusion that petitioners' application was appropriately denied. Respondent's relevant findings and conclusions of law have been previously enumerated and we need not repeat them here. However, we elaborate briefly on evidence contained in the record supporting respondent's findings.

City Code § 7-16-2(c)(3) requires a showing that the value of properties adjoining or abutting the subject property would not be adversely affected by the proposed land use. The City's Staff Report submitted to respondent expressed concern that petitioners' Property Value Impact Study did not address properties in the vicinity of the subject property, but rather focused on towers and properties in other parts of the City. Petitioners' evidence was about other neighborhoods and other towers in the City. Their study did not even include information with respect to an existing cellular tower a short distance from the proposed site that potentially affected the same neighborhoods. Petitioners simply did not meet their burden of demonstrating the absence of harm to property adjoining or abutting the proposed tower as required by § 7-16-2(c)(3).

Moreover, respondent's findings regarding the nature of the area surrounding the proposed site are all supported by the record. This area, zoned CB-II, includes residential neighborhoods in close proximity to the proposed tower. Based on uncontroverted evidence,

respondent correctly found the proposed tower would rise four times above existing buildings in the area. Petitioners' own computerized photographs showed how the proposed tower would stand out in sharp contrast to other area buildings. Ironically, such evidence of the proposed tower's visibility and predominance over existing buildings corroborated testimony of twelve witnesses opining that the proposed tower would be an eyesore and adversely affect their property values.

In addition, City Code § 7-11-2(d)(2) requires that landscaping "bufferyards" be located on the property of the party seeking to develop the proposed land use. Respondent found, and the record clearly shows, that the proposed tower's landscaping buffer would be partially located on property not within the subject property leased by petitioner SBA, the party seeking to develop the tower. While petitioners submitted an "alternate landscaping plan" which the TRC ultimately approved, City staff recommended the issue be resolved in a manner that would bind SBA's lessor, thereby securing control of the landscaping bufferyard. Petitioners did not submit any document purporting to bind the lessor of the land containing a portion of the landscaping bufferyard, and thus, the record contains no guarantee that the bufferyard required by the City Code would be present.

The Staff Report further expressed concern that the use of alternative sites and stealth technology had not adequately been considered, as required by City Code § 7-16-2(d)(3). Petitioners merely asserted that existing towers were too low for their needs and that alternative sites would not be financially feasible. Petitioners did not carry their burden to affirmatively demonstrate that multiple shorter towers in compliance with CB-II zoning height requirements would be inadequate, that alternate locations were technically, as opposed to financially, infeasible, or that stealth technology was not a reasonable alternative.

In short, respondent's findings were amply supported by the evidence presented at the hearing. While petitioners correctly assert they produced competent evidence, this Court's role is not to sit as a "super city council" to sift and determine facts. *See Dialysis Care*, 137 N.C. App. at 646, 529 S.E.2d at 261; *JWL Invs., Inc. v. Guilford County Bd. Of Adjust.*, 133 N.C. App. 426, 432, 515 S.E.2d 715, 719, (" 'When the Court of Appeals applies the whole record test and reasonable but conflicting views emerge from the evidence, the Court cannot substitute its judgment for the administrative body's decision.' ") (quoting *CG&T Corp. v. Bd. Of Adjustment of*

*Wilmington,* 105 N.C. App. 32, 40, 411 S.E.2d 655, 660 (1992)), *disc. review denied,* 351 N.C. 357, —— S.E.2d —— (1999).

We hold that the record as a whole contains sufficient relevant evidence as a reasonable person could find adequate to support the conclusion that petitioners failed to meet all requirements necessary for a CUP. On this record, respondent's denial of the CUP was certainly neither arbitrary nor capricious. *See JWL Invs.,* 133 N.C. App. at 432, 515 S.E.2d at 719 (where trial court properly concluded board's decision was based on substantial evidence, board decision not arbitrary or capricious).

### III.

Third, petitioners argue respondent failed to follow correct City Code and state law procedures for review of an application for a CUP by failing to base its denial on sufficient competent record evidence. Having held respondent's findings of fact to be squarely supported by sufficient record evidence, and that such findings support respondent's conclusions of law and ultimate denial of the CUP, we find no merit in this assignment of error.

### IV.

[4] Petitioners' fourth argument is, in essence, an additional challenge to respondent's denial of the CUP based on sufficiency of the evidence. Petitioners allege denial of the CUP was in violation of a provision of the federal Telecommunications Act of 1996 ("the Act") requiring that,

> [a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.

47 U.S.C. § 332(c)(7)(B)(iii).

The United States Court of Appeals for the Fourth Circuit recently addressed an identical challenge to a county board denial of a special use permit for the construction of a wireless telecommunications tower. *See 360 degrees Communications Co. of Charlottesville v. Board of Sup'rs of Albemarle County,* 211 F.3d 79 (4th Cir. 2000). The court defined the term "substantial evidence" within the meaning of the Act as " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,' "

[141 N.C. App. 19 (2000)]

requiring "more than a mere scintilla but less than a preponderance." *Id.* at 83 (quoting *AT & T Wireless PCS, Inc. v. City Council of the City of Virginia Beach*, 155 F.3d 423, 430 (4th Cir. 1998)).

In applying this standard, the Fourth Circuit upheld denial of the special use permit, noting the local citizens' unanimous opposition to the proposed tower, that the tower would rise 40 to 50 feet above the existing tree canopy at the proposed site, and that the tower would be inconsistent with various county plans and ordinances. *Id.* at 84. The court noted the petitioner's argument that the proposed tower would be minimally visible, optimal for providing service, and that the petitioner would address all planning staff concerns. Yet, the court also noted the neighboring citizens' reasonable opposition. Such issues, "as to which conflicting evidence was presented, are of the type that zoning boards are typically qualified to resolve." *Id.* at 85.

Likewise, in the present case, respondent is precisely the body empowered by law to determine whether to issue the CUP. Upon conflicting evidence, the decision properly rests with respondent, not this Court. Upon our review of the whole record, there is adequate evidence, under federal or state law, to support the conclusion that petitioners failed to satisfy *all* City Code requirements for issuance of the CUP. This assignment of error is overruled.

## V.

**[5]** Petitioners' final argument asserts respondent's decision violates the Telecommunications Act by prohibiting the provision of personal wireless services and unreasonably discriminating among providers of functionally equivalent services. Under the Act, "[t]he [local] regulation of the placement. . . of personal wireless service facilities. . . shall not prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(II).

The United States Court of Appeals for the Fourth Circuit recently addressed an identical challenge. *See 360 degrees Communications Co.*, 211 F.3d at 86. The exact issue before the court was whether "a single denial of a site permit could ever amount in effect to the prohibition of wireless services" in violation of § 332(c)(7)(B)(i)(II). *Id.* The court determined that, due to the nature of wireless services and its ability to be effected in numerous sites in various combinations, "the simple fact of denial with respect to a particular site is not enough, there must be something more, taken from the circumstances of the particular application or from

the procedure for processing the application, that produces the 'effect' of prohibiting wireless services." *Id.* at 86.

The court noted that conceptually, although unlikely in a "real world" application, a denial of such a permit could amount to a prohibition under § 332(c)(7)(B)(i)(II) if wireless service could only be provided from that particular site. *Id.* at 86-87. Determining that 100% coverage is not required by the Act, the court noted the difficulty in establishing a violation of the provision if such service is already provided in an area. *Id.* at 88 fN1. Thus, where the petitioner's own evidence acknowledged the existence of other towers in the area, it failed to carry the "heavy burden" of demonstrating that denial of the application for one particular site was tantamount to a prohibition of service. *Id.* at 88.

Applying such principles here, petitioners have likewise failed to establish respondent's denial of the CUP was tantamount to a complete prohibition on wireless service in the area. Petitioners fail to cite any evidence, other than the fact their permit was denied, to support such a contention. Rather, petitioners' own evidence establishes that their intent was to fill a gap and improve existing coverage. Indeed, petitioners' brief acknowledges the "several other existing towers in the general vicinity that belong to other wireless providers." Thus, as in *360 degrees Communications Co.*, petitioners have failed to carry their "heavy burden" of establishing a complete prohibition in service based on denial of the CUP.

We also find no substantial evidence, and consequently, no merit in petitioners' argument that, given the presence of other towers in the area, denial of the CUP operates to discriminate among functionally equivalent providers. Petitioners have not highlighted any evidence in the record tending to show the existing towers also failed to meet all general requirements under City Code § 7-16-2(c) but were nonetheless issued a CUP.

The order of the superior court upholding respondent's denial of petitioners' application for the CUP is hereby affirmed.

Affirmed.

Chief Judge EAGLES and Judge TIMMONS-GOODSON concur.