**BLAIR INVS., LLC v. ROANOKE RAPIDS CITY COUNCIL**

[231 N.C. App. 318 (2013)]

BLAIR INVESTMENTS, LLC, Petitioner
v.
ROANOKE RAPIDS CITY COUNCIL and CITY OF ROANOKE RAPIDS, Respondents

No. COA13-690

Filed 17 December 2013

**Zoning—erroneous denial of special use permit—cell tower**

The trial court erred by affirming the city council's decision to deny petitioner's application for a special use permit. Petitioner made a *prima facie* case that it was entitled to a special use permit to construct a cell tower and the city council's denial of petitioner's application was not supported by competent, material, and·substantial evidence.

Appeal by Petitioner from order entered 25 February 2012 by Judge Alma L. Hinton in Halifax County Superior Court. Heard in the Court of Appeals 4 November 2013.

*Richard E. Jester for petitioner-appellant.*

*Chichester Law Office, by Geoffrey P. Davis, and Gilbert W. Chichester, for respondent-appellees.*

STEELMAN, Judge.

Where petitioner made a *prima facie* case that it was entitled to a special use permit to construct a cell tower and the city council's denial of petitioner's application was not supported by competent, material, and substantial evidence, the trial court erred by affirming the city council's decision.

I.  Factual and Procedural Background

Blair Investors, LLC, (petitioner), a North Carolina limited liability corporation, leased a 100 square foot site in Roanoke Rapids to U.S. Cellular, which planned to install a cell phone tower. The property is zoned I-1 Industrial by the City of Roanoke Rapids, a zoning category that allows placement of a cellular phone tower upon granting of a special use permit.

Petitioner submitted an application to the Roanoke Rapids Planning and Development Department (the planning department) for a special use permit to construct the cell tower, and on 8 August 2012 the planning

department submitted a report to the mayor of Roanoke Rapids and to the Roanoke Rapids City Council (the council) (respondent, with City of Roanoke Rapids, respondents) recommending approval of the application. On 14 August 2012 the council held a public hearing on petitioner's application. Sworn testimony was offered by the director of the planning department, who introduced the department's report, and by several area residents who commented on petitioner's application. At a subsequent meeting on 9 October 2012 the council denied the special use permit on the grounds that "more probably than not" the proposed tower would "endanger the public health or safety" and would "not be in harmony with the surrounding area."

On 14 November 2012, petitioner filed a petition for writ of *certiorari* in Superior Court, seeking review of respondent's decision. On 25 February 2012, the trial court entered an order affirming respondent's denial of petitioner's application for a special use permit.

Petitioner appealed.

## II. Evidentiary Support for Denial of Special Use Permit

In its first argument, petitioner contends that the trial court erred in affirming the decision of the council, on the grounds that the council's ruling was "not supported by any relevant evidence." We agree.

### A. Standard of Review

"[T]he terms 'special use' and 'conditional use' are used interchangeably[.] . . . [A] conditional use or a special use permit 'is one issued for a use which the ordinance expressly permits in a designated zone upon proof that certain facts and conditions detailed in the ordinance exist.' " *Concrete Co. v. Board of Commissioners*, 299 N.C. 620, 623, 265 S.E.2d 379, 381 (1980) (quoting *Refining Co. v. Board of Aldermen*, 284 N.C. 458, 467, 202 S.E. 2d 129, 135 (1974) (other citation omitted).

"A particular standard of review applies at each of the three levels of this proceeding - the [council], the superior court, and this Court. First, the [council] is the finder of fact in its consideration of the application for a special use permit. The [council] is required, as the finder of fact, to

> "follow a two-step decision-making process in granting or denying an application for a special use permit. If an applicant has produced competent, material, and substantial evidence tending to establish the existence of the facts and conditions which the ordinance requires for the issuance of a special use permit, *prima facie* he is entitled to

it. If a *prima facie* case is established, [a] denial of the permit [then] should be based upon findings contra which are supported by competent, material, and substantial evidence appearing in the record."

*Davidson Cty. Broadcasting Inc. v. Rowan Cty. Bd. of Comm'rs*, 186 N.C. App. 81, 86, 649 S.E.2d 904, 909 (2007) (quoting *Mann Media, Inc. v. Randolph Cty. Planning Bd.*, 356 N.C. 1, 12, 565 S.E.2d 9, 16-17 (2002) (internal quotation omitted), *disc. review denied*, 362 N.C. 470, 666 S.E.2d 119 (2008).

"Judicial review of town decisions to grant or deny conditional use permits is provided for in G.S. 160A-388(e) which states, *inter alia*, 'Every decision of the board shall be subject to review by the superior court by proceedings in the nature of *certiorari.*'" *Concrete Co.*, 299 N.C. at 623, 265 S.E.2d at 381. "[T]he task of a court reviewing a decision on an application for a conditional use permit made by a town board sitting as a quasi-judicial body includes: (1) [r]eviewing the record for errors in law, (2) [i]nsuring that procedures specified by law in both statute and ordinance are followed, (3) [i]nsuring that appropriate due process rights of a petitioner are protected including the right to offer evidence, cross-examine witnesses, and inspect documents, (4) [i]nsuring that decisions of town boards are supported by competent, material and substantial evidence in the whole record, and (5) [i]nsuring that decisions are not arbitrary and capricious." *Concrete Co.* at 626, 265 S.E.2d at 383.

"When this Court reviews a superior court's order regarding a zoning decision by a Board of Commissioners, we examine the order to: '(1) determin[e] whether the [superior] court exercised the appropriate scope of review and, if appropriate, (2) decid[e] whether the court did so properly.'" *Davidson Cty.*, 186 N.C. App. at 87, 649 S.E.2d at 910 (quoting *Mann Media*, 356 N.C. at 14, 565 S.E.2d at 18 (citations and quotations omitted).

"There are two standards of review that may apply to special use permit decisions. Whole record review, a deferential standard, applies where we must determine if a decision was supported by the evidence or if it was arbitrary or capricious. However, errors of law are reviewed *de novo.*" *American Towers v. Town of Morrisville*, __ N.C. App. __, __, 731 S.E.2d 698, 701 (2012) (citing *Mann Media* at 13, 565 S.E.2d at 17), *disc. review denied*, __ N.C. __, 743 S.E.2d 189 (2013)).

### B. Analysis

"When an applicant for a conditional use permit 'produces competent, material, and substantial evidence of compliance with all ordinance

requirements, the applicant has made a *prima facie* showing of entitlement to a permit.' " *Howard v. City of Kinston*, 148 N.C. App. 238, 246, 558 S.E.2d 221, 227 (2002) (quoting *SBA, Inc. v. City of Asheville City Council*, 141 N.C. App. 19, 27, 539 S.E.2d 18, 22 (2000) (internal citation omitted). "Substantial evidence is defined as 'that which a reasonable mind would regard as sufficiently supporting a specific result.' " *Baker v. Town of Rose Hill*, 126 N.C. App. 338, 341, 485 S.E.2d 78, 80 (1997) (quoting *CG&T Corp. v. Bd. of Adjustment of Wilmington*, 105 N.C. App. 32, 40, 411 S.E.2d 655, 660 (1992) (internal citation omitted). Material evidence is evidence "[h]aving some logical connection with the consequential facts," BLACK'S LAW DICTIONARY 998 (8th ed. 2004), and competent evidence is generally defined as synonymous with admissible evidence, BLACK'S LAW DICTIONARY 595 (8th ed. 2004). Thus, substantial, competent, material evidence is evidence that is admissible, relevant to the issues in dispute, and sufficient to support the decision of a reasonable factfinder. "[W]e review de novo the initial issue of whether the evidence presented by petitioner met the requirement of being competent, material, and substantial." *American Towers*, __ N.C. App. at __, 731 S.E.2d at 701 (citing SBA, 141 N.C. App. at 23-29, 539 S.E.2d at 20-24).

We first consider whether petitioner made a *prima facie* case of entitlement to a special use permit. According to the minutes of the public hearing, the director of the planning department, Ms. Lasky, offered sworn testimony and introduced the planning department's report finding in part that (1) a wireless communication tower is "a use that is permitted with the approval of a Special Use Permit"; (2) the tower had been "designed by a North Carolina Professional Engineer" and its design and construction "will comply with all applicable structural engineering requirements"; (3) the permit was within the planning department's jurisdiction; (4) the application was complete; and (5) the tower would "comply with all of the requirements of The Land Use Ordinance if completed as proposed in the application."

The planning department's report also concluded that it was "probably true" that ingress and egress to the lot was safe and convenient; that the effect of signs, lights, parking, noise, and refuse disposal on neighboring properties would be similar to other uses permitted in the zoning district; that utilities were available; and that the tower would be appropriately screened and would preserve the natural features of the property.

Petitioner's application for a special use permit, which is over 100 pages, included the sworn affidavit of radiofrequency engineer Xiyang Liu averring that the tower would "comply with FCC and FAA rules

concerning construction requirements, safety standards, interference protection, power and height limitations, and radio frequency standards," and that it would "not interfere with any other radio devices such as TV's, radios or other cellular phones" and would "not interfere with any household products such as microwave ovens." Other documents in the application established that the tower met the requirements of the National Environmental Policy Act in that it would not ·adversely affect any endangered species, critical habitats, or historic properties; would not affect American Indian religious sites; would not involve any significant change in wetland fill, deforestation, or water diversion; was not located in a 100 year flood plain; and would not threaten human exposure to levels of radiofrequency radiation. Based on its assessment of these and other relevant factors, the planning department's report concluded that if completed as proposed the tower "more probably than not"

> (a) *Will not materially endanger the public health or safety[.]*
>
> The staff has determined that this is probably true: the proposed use will be located within an existing industrial facility [and] . . . will be required to meet all governmental and industry safety guidelines. . . . An assessment of the previously referenced seven items . . . indicates no specific endangerment to the public health or safety that is not adequately addressed.
>
> (b) *Will not substantially injure the value of the adjoining or abutting property[.]*
>
> The staff has determined that this is probably true. . . .
>
> (c) *Will be in harmony with the area in which it is to be located[.]*
>
> The staff has determined that this is probably true: its use as proposed will be in harmony with the existing surrounding uses in the area based on [the] previously referenced seven items[.] . . .
>
> (d) *The use will be in general conformity with the Comprehensive Development Plan, Thoroughfare Plan, or other plan officially adopted by the City Council.*
>
> The staff has determined that this is probably true.

The planning department's report also stated that petitioner had "addressed the requisite questions, which must be answered by the

City Council in the application" and that "it is the Staff's opinion that the request satisfactorily meets the requirements of . . . [the] Land Use Ordinance."

We hold that the information in the planning department's report in conjunction with the director's testimony, constituted "competent, material, and substantial evidence tending to establish the existence of the facts and conditions which the ordinance requires for the issuance of a special use permit." *Mann Media*, 356 N.C. at 12, 565 S.E.2d at 16. We agree with petitioner that it made a *prima facie* showing that it was entitled to a special use permit.

Once an applicant makes a *prima facie* showing of entitlement to a special use permit, "the burden of establishing that the approval of a conditional use permit would endanger the public health, safety, and welfare falls upon those who oppose the issuance of the permit. Denial of a conditional use permit must be based upon findings which are supported by competent, material, and substantial evidence appearing in the record." *Howard*, 148 N.C. App. at 246, 558 S.E.2d at 227 (citing *Woodhouse v. Board of Commissioners*, 299 N.C. 211, 219, 261 S.E.2d 882, 888 (1980) (internal quotation omitted).

> Moreover, a city council's denial of a conditional use permit based solely upon the generalized objections and concerns of neighboring community members is impermissible. Speculative assertions, mere expression of opinion, and generalized fears "about the possible effects of granting a permit are insufficient to support the findings of a quasi-judicial body." In other words, the denial of a conditional use permit may not be based on conclusions which are speculative, sentimental, personal, vague, or merely an excuse to prohibit the requested use.

*Howard* at 246, 558 S.E.2d at 227 (citing *Gregory v. County of Harnett*, 128 N.C. App. 161, 165, 493 S.E.2d 786, 789 (1997), quoting *Sun Suites Holdings, LLC v. Board of Aldermen of Town of Garner*, 139 N.C. App. 269, 276, 533 S.E.2d 525, 530 (internal citation omitted), *disc. review denied*, 353 N.C. 280, 546 S.E.2d 397 (2000), and citing *Woodhouse*, 299 N.C. at 220, 261 S.E.2d at 888).

We next consider whether the record contains substantial, competent, and material evidence to support denial of petitioner's application for a permit. The only evidence offered in opposition to issuance of the special use permit consisted of comments by several local residents:

1. Mr. Steve Hill stated that his "main concerns" were with David King's maintenance of the lot which, in his opinion, had been "an eyesore to the City and neighborhood for many years[.] He said that the tower would be visible from his house and that he did "not believe this would be good for his property value."

2. Mrs. Connie Hill stated that her "concerns" were "the same as her husband's" and that when she looked outside she saw "a building falling down[.]" Mrs. Hill said that she is not opposed to a cell tower but "does not want to look at one."

3. Mr. Jessie Bass stated "one of his major concerns is whether or not the cell tower will interfere with the wireless devices he has in his home" and that the city should have taken action to address maintenance of the property before now.

4. Dr. Hashmat Chaudhry stated his office was "across the street from this property," that some of his patients had complained about an unpleasant smell from the lot, and that "Mr. King's garbage blows onto his property during storms." He asked whether items stored on the property constituted a fire hazard, and stated that he was "concerned about the danger to the public" from the property. He also said that he did "not see a need for the cell tower."

5. Mr. Craig Moseley "stated this proposed tower will almost be in his backyard" and "asked if Mr. King would maintain the tower as he does the rest of the property."

6. Mr. Dennis Blackmon "stated his main concern is with the existing building."

7. Ms. Evelyn Dawson "stated she would like to know the possible negative health and environmental side effects of such a structure" and that "she feels the tower might be a blight on a well-traveled area of the community."[1]

The comments from area residents were primarily concerned with the condition of a building on the property. To the extent that these

---

1. According to the minutes of the public hearing, these comments constitute the entire extent of evidence in opposition to the proposed cell tower. No transcript was made of the hearing.

speakers addressed the cell tower, their comments consisted entirely of speculative opinions, unsupported by any documentary or testimonial evidence, or of statements informing the council that the speaker had a question or a "concern" about a particular issue.

Respondent denied petitioner's application for a special use permit on the grounds that the tower would more probably than not "materially endanger the public health or safety" and that it was "not in harmony with the area in which it is to be located." However, no evidence was introduced that was competent or material on either the health and safety implications of the tower or whether it would be in harmony with the surrounding area. "The inclusion of the particular use in the ordinance as one which is permitted under certain conditions, is equivalent to a legislative finding that the prescribed use is one which is in harmony with the other uses permitted in the district." *Woodhouse*, 299 N.C. at 216, 261 S.E.2d at 886. Respondents cite no evidence that the tower would not be in harmony with the area, nor any evidence about health or safety issues. We hold that respondents' denial of petitioner's application was not supported by substantial, material, and competent evidence.

Respondents allege on appeal that the "concerns" of local residents constituted substantial, material, and competent evidence. However, respondents neither acknowledge nor attempt to distinguish precedent holding that a board's decision to deny a permit request may not be based on speculative opinions:

> The evidence relied upon by the respondent Board to support its finding is incompetent as opinion testimony and is highly speculative in nature. "The denial of a special exception permit may not be founded upon conclusions which are speculative, sentimental, personal, vague or merely an excuse to prohibit the use requested."

*Woodhouse*, 299 N.C. at 220-21, 261 S.E.2d at 888 (quoting *Baxter v. Gillispie*, 60 Misc. 2d 349, 354, 303 N.Y.S. 2d 290, 296 (1969).

We hold that the council's denial of petitioner's application for a special use permit was not supported by substantial, competent, and material evidence. "When a Board action is unsupported by competent substantial evidence, such action must be set aside for it is arbitrary." *MCC Outdoor, LLC v. Town of Franklinton Bd. of Comm'rs*, 169 N.C. App. 809, 811, 610 S.E.2d 794, 796 (citing *Refining Co.*, 284 N.C. at 468, 202 S.E.2d at 135-36), *disc. review denied*, 359 N.C. 634, 616 S.E.2d 540 (2005). Where the trial court affirms the denial of a permit application when the denial was not based on sufficient evidence, the trial court

must be reversed. *MCC Outdoor*, 169 N.C. App. at 815, 610 S.E.2d at 798. We hold that the trial court's order must be reversed.

Petitioner has also argued that the trial court's order should be reversed on the grounds that the council's decision was internally inconsistent because it found both that the proposed cell tower complied with the town's planning ordinance and also that it was not in harmony with the surrounding area, and because the council's ruling violated the federal Telecommunications Act. However, having reversed the trial court on the grounds discussed above, we need not address these alternative bases for reversal.

### Conclusion

We conclude that the trial court erred by affirming the decision of the council to deny petitioner's application for a special use permit and that its order should be reversed and the case remanded to Halifax County Superior Court for remand to the city council with instructions to grant petitioner's application for a special use permit.

REVERSED.

Chief Judge MARTIN and Judge DILLON concur.