IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA16-1101

Filed: 6 June 2017

Robeson County, No. 15 CVS 3299

INNOVATIVE 55, LLC and FLS ENERGY, INC., Petitioners,

v.

ROBESON COUNTY and the ROBESON COUNTY BOARD OF COMMISSIONERS, Respondents.

Appeal by petitioners from order entered 11 March 2016 by Judge James Gregory Bell in Robeson County Superior Court. Heard in the Court of Appeals 26 April 2017.

*Smith Moore Leatherwood LLP, by Colin J. Tarrant and Elizabeth Brooks Scherer, for petitioner-appellants.*

*Manning Fulton & Skinner, P.A., by J. Whitfield Gibson and Robeson County Attorney Patrick A. Pait, for respondent-appellees.*

TYSON, Judge.

FLS Energy, Inc. and its subsidiary, Innovative 55, LLC (collectively, "FLS Energy") appeal from the superior court's order affirming the decision of the Robeson County Board of Commissioners ("the Commissioners") to deny their application for a conditional use permit ("CUP") to construct a solar farm. We reverse and remand.

I. Background

A. Proposed Solar Farm in Robeson County

In July 2015, FLS Energy submitted an application to the Robeson County Planning and Zoning Board ("the Planning Board") and sought a CUP to construct and operate a solar panel facility on farmland situated in Robeson County. In 2015, Charles and Randall Andrews entered into a lease with FLS Energy to permit FLS Energy to build and operate a solar panel facility on forty acres of their 54.37-acre parcel.

The proposed site is zoned Residential Agricultural ("RA") under the Robeson County Zoning Ordinance ("the Ordinance"). Uses permitted by right in an RA zoned district include: (1) low-density, single-family and mobile home residences, and (2) all agricultural and horticultural uses. Additional specific uses are permitted on RA zoned property, if the permit applicant complies with certain additional conditions imposed by the Ordinance. "Public works and public utility facilities" are two approved conditional uses for properties zoned RA.

The site plan submitted with FLS Energy's CUP application contained the setback and landscaping buffers required by the Ordinance. The Planning Board heard the CUP application and determined that FLS Energy had met the criteria for a CUP and that the project "would be in the best interests of the citizens of [Robeson] [C]ounty." Subject to stated conditions, not relevant to this appeal, the

Planning Board unanimously recommended to the Commissioners that FLS Energy's CUP application be approved.

In October and November 2015, the Commissioners held two quasi-judicial hearings to determine whether to grant FLS Energy's CUP application.

B. Testimony Presented to the Commissioners by FLS Energy

Tommy Cleveland, an expert in solar farms at North Carolina State University's Clean Energy Technology Center, testified regarding the design and operation of solar energy systems. Mr. Cleveland asserted evidence shows solar farms are safe for both the short and long-term. Solar panels are constructed with glass and aluminum components, and do not contain any toxic components. Solar panels have operated in close proximity to population areas for fifty years without reported negative consequences. Mr. Cleveland opined the project would pose no danger to the surrounding community's health, safety, or general welfare.

Gregory Hoffman, a licensed professional engineer who is certified in erosion and sediment control, testified by affidavit regarding the project's design and operation. He explained solar farms generally only require weekly maintenance visits, and the project would generate "virtually no traffic." The solar panels are less than ten feet tall at their highest points, and other proposed structures on the site would not exceed twenty-five feet. A six-foot high security fence was proposed to enclose and secure the solar farm. Mr. Hoffman opined that the project would

not negatively impact the character of the surrounding area, public health, safety, or traffic, and the use of the property as a solar farm would be in harmony with the surrounding area.

Landscape architect Stephen Johnson, who is certified by the American Society of Landscape Architects, testified regarding FLS Energy's extensive landscaping plans for the project. During meetings with nearby owners and community members and after receiving their comments, FLS Energy had revised its original site plan to increase landscape buffering by thirty percent. FLS Energy had committed to spend over $65,000.00 to landscape the buffer, which included professional maintenance of the landscaping. Mr. Johnson explained how trees and vegetation would be planted to conceal the solar farm from view of adjoining properties.

Rich Kirkland, a licensed and certified appraiser, testified by affidavit regarding the project's financial impact on the surrounding neighborhood. Mr. Kirkland prepared a property impact analysis, which was based upon a comparative study of the property impacts of over twenty other existing solar farms.

He opined solar farms do not negatively impact the value of adjacent and nearby properties. He testified that some people in RA zoned properties regard having a solar farm on adjacent property as a positive. He noted that Realtors® and developers had stated, "A solar farm is better than a turkey farm," because a

solar farm produces no noise, odors, or traffic. Mr. Kirkland opined that the solar farm would not decrease neighborhood property values, and would not be injurious to the use and enjoyment of other neighboring properties.

Finally, Charles Andrews, one of the property owners, testified the project would cause their property taxes to increase from $2,500 to approximately $100,000.00 per year, if the solar farm was approved, and would benefit the surrounding community.

### C. Testimony Presented by Solar Farm Opponents

Three individuals testified in opposition of the issuance of the CUP for the solar farm. Ray Oxendine lives in Maxton, North Carolina and testified that members of his extended family live adjacent to the site of the proposed project. Mr. Oxendine had seen other solar farms and considered them to be unattractive. He questioned whether solar farms would be safe to live near fifty years from now and asked the Commissioners to deny the CUP because some people in the community opposed it.

Louis Oxendine, a member of the community who owns nearby property, was concerned that the solar farm would be located across the street from an older church and the site where the Croatan Indian School, established in 1887, had once stood. He felt the property across the street was a "historical spot." Mr. Oxendine

was concerned about the CUP because other solar farms he had seen had only small bushes for landscaping and "were not beautiful at all."

Dr. Jo Ann Lowery, a Robeson County school board member and an adjacent property owner, also appeared and testified in opposition to issuance of the CUP for the solar farm. She produced a petition, purportedly in opposition to the construction of the solar farm, signed by 116 community members. Dr. Lowery was not convinced, based upon her own research, that solar farms were safe. She recognized and admitted she was not an expert in the safety of solar farms.

On 2 November 2015, the Commissioners voted to deny FLS Energy's CUP request. The Commissioners specifically found the solar farm: (1) would be injurious to the use and enjoyment of other property in the immediate vicinity; (2) would impede the normal and orderly development and improvement of the surrounding property for uses permitted; (3) would affect property values within the immediate neighborhood; and, (4) would not be "in harmony" with the surrounding neighborhood.

FLS petitioned the Robeson County Superior Court for review of the Commissioner's decision by writ of certiorari pursuant to the provisions of N.C. Gen. Stat. § 160A-393. On 11 March 2016, the superior court entered an order, which upheld the Commissioners' decision. FLS Energy appeals.

## II. Jurisdiction

Jurisdiction lies in this Court from final order of the superior court pursuant to N.C. Gen. Stat. § 7A-27(b) (2015).

### III. Issues

FLS Energy argues the superior court erred by affirming the Commissioners' decision because: (1) competent, material, and substantial evidence does not support the Commissioners' denial of the CUP, after FLS Energy established a *prima facie* case that the permit should have been granted; (2) the opponents of the solar farm presented only speculative, generalized, non-expert testimony in opposition to the project; and, (3) the Commissioners improperly denied FLS Energy's permit request based upon grounds not expressly stated in or allowed by the Ordinance.

### IV. Standard of Review

"'A legislative body such as the Board [of Commissioners], when granting or denying a conditional use permit, sits as a quasi-judicial body.'" *Sun Suites Holdings, LLC v. Bd. of Alderman of Town of Garner*, 139 N.C. App. 269, 271, 533 S.E.2d 525, 527, *disc. review denied*, 353 N.C. 280, 546 S.E.2d 397 (2000); *see also Dellinger v. Lincoln Cty.*, __ N.C. App. __, __, 789 S.E.2d 21, 26, *disc. review denied*, __ N.C. __, __ S.E.2d __ (2016).

The Commissioners' decision on the issuance of the CUP "shall be subject to review of the superior court in the nature of certiorari." N.C. Gen. Stat. § 160A-

381(c) (2015). In reviewing the Commissioners' decision, "the superior court sits as an appellate court, and not as a trier of facts." *Tate Terrace Realty Inv'rs, Inc. v. Currituck Cty.*, 127 N.C. App. 212, 217, 488 S.E.2d 845, 848 (citation omitted), *disc. review denied*, 347 N.C. 409, 496 S.E.2d 394 (1997).

The role of the superior court in reviewing the decision of a Board of Commissioners, sitting as a quasi-judicial body, is as follows:

> (1) Reviewing the record for errors in law,
>
> (2) Insuring that procedures specified by law in both statute and ordinance are followed,
>
> (3) Insuring that appropriate due process rights of a petitioner are protected including the right to offer evidence, cross-examine witnesses, and inspect documents,
>
> (4) Insuring that decisions of town boards are supported by competent, material and substantial evidence in the whole record, and
>
> (5) Insuring that decisions are not arbitrary and capricious.

*Coastal Ready-Mix Concrete Co., Inc. v. Bd. of Comm'rs of Town of Nags Head*, 299 N.C. 620, 626, 265 S.E.2d 379, 383, *reh'g denied*, 300 N.C. 562, 270 S.E.2d 106 (1980).

"This Court's task on review of the superior court's order is twofold: (1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly." *SBA, Inc. v. City of*

*Asheville City Council*, 141 N.C. App. 19, 23, 539 S.E.2d 18, 20 (2000) (citations and internal quotation marks omitted).

Here, FLS Energy raises issues which require concurrent application of both the *de novo* and "whole record" review. "Whether competent, material and substantial evidence is present in the record is a conclusion of law," which is reviewed *de novo*. *Am. Towers, Inc. v. Town of Morrisville*, 222 N.C. App. 638, 641, 731 S.E.2d 698, 701 (2012), *disc. review denied*, 366 N.C. 603, 743 S.E.2d 189 (2013) (citation omitted). Whether the Commissioners' decision was based upon procedures and standards set out in the Ordinance is a question of law, which is also reviewed *de novo*. *Ayers v. Bd. of Adjustment*, 113 N.C. App. 528, 531, 439 S.E.2d 199, 201*, disc. review denied*, 336 N.C. 71, 445 S.E.2d 28 (1994).

"When a party challenges the sufficiency of the evidence or when the [Commssioners'] decision is alleged to have been arbitrary and capricious, this Court employs the whole record test." *Dellinger*, __ N.C. App. at __, 789 S.E.2d at 26. "The whole record test requires the reviewing court to examine all competent evidence (the whole record) in order to determine whether the agency decision is supported by substantial evidence." *Id.* at __, 789 S.E.2d at 26 (quoting *SBA, Inc.*, 141 N.C. App. at 26, 539 S.E.2d at 22).

V. Commissioners' Denial of CUP

FLS Energy argues the Commissioners improperly denied its CUP to construct the solar farm. FLS Energy asserts it presented a *prima facie* showing it was entitled to issuance of a CUP under the standards and conditions of the Ordinance, and the opponents of the solar farm failed to present competent and material evidence to overcome FLS Energy's *prima facie* showing to allow the denial of its application. We agree.

"The general rule is that a zoning ordinance, being in derogation of common law property rights, should be construed in favor of the free use of property." *Dobo v. Zoning Bd. of Adjustment of Wilmington*, 149 N.C. App. 701, 712, 562 S.E.2d 108, 115 (2002) (Tyson, J., dissenting), *rev'd per curiam,* 356 N.C. 656, 576 S.E.2d 324 (2003); *see also City of Sanford v. Dandy Signs, Inc.*, 62 N.C. App. 568, 569, 303 S.E.2d 228, 230 (1983). "Zoning regulations are not a substitute for private restrictive covenants." *Dobo*, 149 N.C. App. at 712, 562 S.E.2d at 115.

### A. FLS Energy's *Prima Facie* Showing of Entitlement to Permit

A solar farm is a conditional use expressly contemplated and listed for property zoned RA under the Ordinance as a "public utility facility." "When an applicant for a conditional use permit 'produces competent, material, and substantial evidence of compliance with all ordinance requirements, the applicant has made a *prima facie* showing of entitlement to a permit.'" *Howard v. City of*

*Kinston*, 148 N.C. App. 238, 246, 558 S.E.2d 221, 227 (2002) (quoting *SBA, Inc.*, 141 N.C. App. at 27, 539 S.E.2d at 22 (2000)).

"Material evidence is "[e]vidence having some logical connection with the facts of consequence or the issues." Black's Law Dictionary 638 (9th ed. 2009). "Substantial evidence is evidence a reasonable mind might accept as adequate to support a conclusion." *Humane Soc'y of Moore Cty. v. Town of Southern Pines*, 161 N.C. App. 625, 629, 589 S.E.2d 162, 165 (citation and quotation marks omitted). "[The evidence] must do more than create the suspicion of the existence of the fact to be established.  It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *Humble Oil & Ref. Co. v. Bd. of Aldermen*, 284 N.C. 458, 471, 202 S.E.2d 129, 137 (1974) (citation, internal quotation marks, and alterations omitted).

FLS Energy's burden to show its *prima facie* compliance with all requirements and conditions of the Ordinance is a burden of *production*, and not a burden of proof. *Dellinger*, __ N.C. App. at __, 789 S.E.2d at 30.  "To hold that an applicant must first anticipate and then prove or disprove each and every general consideration would impose an intolerable, if not impossible, burden on an applicant for a conditional use permit.  An applicant need not negate every possible objection to the proposed use." *Woodhouse v. Bd. of Comm'rs of Nags Head*, 299 N.C. 211, 219, 261 S.E.2d 882, 887-88 (1980).

Section 17.3 of the Ordinance at issue is titled, <u>CONDITIONAL USES</u>, and states:

> The following *uses are permitted* subject to any additional conditions imposed:
>
> (C) *Public works and public utility facilities*, such as transformer stations, water towers, and telephone exchanges, provided: 1) such *facilities are essential* to the severs [sic] of the community and no vehicles or materials shall be stored on the premises; 2) all buildings and apparatus shall be set back at least twenty (20) feet from all property lines and shall be designated and landscaped in such a way as to blend with the surrounding area. (emphasis supplied).

Section 30 of the Ordinance provides:

> No conditional use permit shall be recommended by the Planning and Zoning Board unless such Board shall find:
>
> A. That . . . the conditional use will not be detrimental to or endanger the public health, safety, morals, comfort, or general welfare;
>
> B. That the conditional use will no[t] be injurious to the use and enjoyment of other property in the immediate vicinity for the purposes already permitted nor substantially diminish and impair property values within the neighborhood;
>
> C. That . . . the conditional use will not impede the normal and orderly development and improvement of the surrounding property for uses permitted in the district;
>
> D. That the exterior architectural appeal and functional plan of any proposed structure will not be so at variance with the exterior architectural appeal and functional plan of the structures . . . in the immediate neighborhood or

with the character of the application district as to cause a substantial depreciation in the property values with[in] the neighborhood;

E.  That adequate utilities, access roads, drainage and/or other necessary facilities have been or are being provided;

F.  That adequate measures have been or will be taken to provide ingress and egress to minimize traffic in the public streets;

G.  That the conditional use shall, in all other respects, conform to the applicable regulations of the district in which it is located . . . .

The Planning Board unanimously found that FLS Energy had clearly met its burden of production under Section 17.3 of the Ordinance.  It produced a site plan and competent testimony which complied with all of the specific CUP requirements set forth in that section.  FLS Energy presented a *prima facie* entitlement to issue the CUP before the Commissioners.

FLS Energy also met its burden of production by presenting competent, material, and substantial evidence before the Commissioners to show compliance with the more general requirements set forth in Section 30 of the Ordinance. *See Howard*, 148 N.C. App. at 246, 558 S.E.2d at 227.

FLS Energy presented material and substantial expert testimony from three witnesses to show:  (1) solar farms are safe in both the short and long-term for the environment and surrounding community; (2) the project would generate " virtually no traffic;" (3) due to the proposed set-backs and landscaping, the project would not

impact the character of the surrounding area; and, (4) the project would not negatively affect the value of adjacent and nearby properties or be injurious to the use and enjoyment of other neighboring properties.

### B. Burden Shifts to Opponents to Rebut FLS Energy's *Prima Facie* Showing

Once an applicant has produced competent, material, and substantial evidence tending to establish compliance with all applicable ordinance requirements for the issuance of a CUP, "[t]he burden of establishing that the approval of a [CUP] would endanger the public health, safety, and welfare falls upon those who oppose the issuance of the permit." *Id.* After a prima facie showing, "[d]enial of a [CUP] must [also] be based upon findings which are supported *by competent, material, and substantial evidence* appearing in the record." *Id.* (emphasis supplied).

The Commissioners' denial of the CUP appears to have been wholly based upon the three witnesses' testimonies and a signed petition in opposition to the CUP. Based upon their testimonies, the Commissioners concluded:

1. That the conditional use permit request would be injurious to the use and enjoyment of other property in the immediate vicinity for the purpose already permitted.

2. That the conditional use permit would impede the normal and orderly development and improvement of the surrounding property for uses permitted in the district.

3. The Board was concerned that the conditional use permit would affect property values within the

immediate neighborhood.

4. That the conditional use permit would not be in harmony with the area in which it is to be located.

Speculative and general lay opinions and bare or vague assertions do not constitute competent evidence before the Commissioners to overcome the applicant's *prima facie* entitlement to the CUP. *MCC Outdoor, LLC v. Town of Franklinton Bd. of Comm'rs*, 169 N.C. App. 809, 815, 610 S.E.2d 794, 798, *disc. review denied*, 359 N.C. 634, 616 SE.2d 540 (2005).

> [The] denial of a conditional use permit based solely upon the generalized objections and concerns of neighboring community members is impermissible. Speculative assertions, mere expression of opinion, and generalized fears about the possible effects of granting a permit are insufficient to support the findings of a quasi-judicial body. In other words, the denial of a conditional use permit may not be based on conclusions which are speculative, sentimental, personal, vague, or merely an excuse to prohibit the requested use.

*Howard*, 148 N.C. App. at 246, 558 S.E.2d at 227 (citation and internal quotation marks omitted).

The Board found that it "heard testimony from several neighbors who argued that the requested use would substantially diminish or impair property values within the neighborhood" and "would increase traffic congestion in the public streets." The record does not show any of the three witnesses in opposition to the CUP presented any competent evidence pertaining to these two issues.

Substantial and material evidence in the record pertaining to these issues was presented by FLS Energy's experts and lay witnesses, who testified the solar farm would not negatively impact property values of other properties within the neighborhood, and would produce "virtually no traffic." Furthermore, our statutes specifically provide that lay witness testimony is not considered "competent evidence" to show either "the use of property in a particular way would affect the value of other property," or "the increase in vehicular traffic resulting from a proposed development would pose a danger to the public safety." N.C. Gen. Stat § 160A-393(k)(3)(a)-(b) (2015); N.C. Gen. Stat. § 153A-349(a) (2015) .

Opponents to the solar farm testified to unsupported and highly speculative claims about their unsubstantiated fears of solar farms and their possible dangers. Opposing contentions included assertions that the solar panels contain "poison," might be connected to "dead birds in California," might produce harmful radiation, and might be hit by hurricanes or tornadoes. The opponents produced no expert testimony or other material and substantial evidence in support of their claims.

A lay witness's testimony regarding "[m]atters about which only expert testimony would generally be admissible under the rules of evidence" is not competent evidence. N.C. Gen. Stat. § 160A-393(k)(3)(c) (2015); N.C. Gen. Stat. § 153A-349(a). The lay testimony regarding the purported safety of solar farms is a matter requiring scientific, technical or other specialized or personal knowledge,

normally outside the experience of an ordinary person. The opponents' testimonies on this topic did not constitute "competent evidence" to rebut FLS Energy's *prima facie* showing to deny the CUP.

FLS Energy presented testimony from multiple expert witnesses tending to show solar farms do not materially endanger the environment or the public's health or safety. The opponents' testimony about health and safety concerns of solar farms is an example of the "generalized and speculative fears," which cannot rebut a *prima facie* showing to support denial of a CUP. *Howard*, 148 N.C. App. at 246, 558 S.E.2d at 227.

The testimony of solar farm opponents that the final project as constructed would be an "eyesore," based upon other solar farms they have seen, is also not competent evidence to support the denial of the solar farm. *See Blair Invs., LLC v. Roanoke Rapids City Council*, 231 N.C. App. 318, 324-25, 752 S.E.2d 524, 529-30 (2013) (statements that a cellphone tower was an "eyesore" and general opposition to the project were rejected as incompetent opinion testimony and did not support denial of the CUP).

Furthermore, "[t]he inclusion of the particular use in the ordinance as one which is permitted under certain conditions, is equivalent to a legislative finding that the prescribed use is *one which is in harmony with the other uses permitted in the district*." *Woodhouse*, 299 N.C. at 216, 261 S.E.2d at 886 (citation omitted)

(emphasis supplied). The Ordinance specifically permits "public works and public utility facilities" as conditional uses in the RA zoning district.

Mr. Oxendine's concern that the proposed solar farm is near a "historical spot" also does not support denial of the CUP. Mr. Oxendine was primarily concerned that children visiting these historical church and former school sites would see the solar farm. Whether a proposed use can "be seen from a particular location is simply irrelevant" to whether it is compatible with the neighborhood. *MCC Outdoor*, 169 N.C. App. at 814, 610 S.E.2d at 798.

Our Legislature has determined the public policy of our State encourages solar equipment and facilities and the use of solar energy. *See, e.g.,* N.C. Gen. Stat. § 105-277(g) (2015) (providing reduced tax rates for buildings equipped with solar energy heating and/or cooling systems). The public policy of our State supports children learning about clean, renewable energy, which is beneficial to all North Carolina citizens.

Finally, the petition that was presented to the Board, purportedly signed by citizens of the surrounding community is not competent evidence to overcome FLS Energy's *prima facie* showing to entitlement to the CUP. *See Humane Soc'y of Moore Cty., Inc.*, 161 N.C. App. at 631-32, 589 S.E.2d at 167 (recognizing a public poll or "survey cannot be used as competent, material evidence as the answers are simply speculative comments from neighborhood residents"). The preamble to the

petition merely states, "We, the undersigned, petition Commissioners to deny the request for a Conditional Use Permit to allow for the establishment of a Solar Farm in a Residential Agricultural District owned by Randal [sic] and Charles D. Andrews . . . ."

The record before us demonstrates FLS Energy's CUP was impermissibly denied "based solely upon the generalized objections and concerns of neighboring community members." *Blair Investments,* 231 N.C. App. at 324, 752 S.E.2d at 529. The opposition was not based upon any specific or supported testimony, or substantial and material evidence, facts, or data. The Board's denial of FLS Energy's *prima facie* entitlement to the CUP was clearly based upon testimonies and a non-specific signed petition "which are speculative, sentimental, personal, vague, or merely an excuse to prohibit the requested use." *Howard*, 148 N.C. App. at 246, 558 S.E.2d at 227.

## VI. Conclusion

Based upon all the evidence and testimony presented, FLS Energy produced a *prima facie* showing of entitlement to support issuing the CUP the Planning Board had unanimously recommended for approval.

After the quasi-judicial hearing, the Commissioners' denial of FLS Energy's application for a CUP is not supported by substantial, competent, and material evidence. "When a Board [of Commissioners'] action is unsupported by competent

substantial evidence, such action must be set aside for it is arbitrary." *MCC Outdoor*, 169 N.C. App. at 811, 610 S.E.2d at 796 (citation omitted). The trial court's order affirming the denial of FLS Energy's CUP application, when the Board's denial was not based on sufficient evidence, is reversed. *See id*. at 815, 610 S.E.2d at 798.

This matter is remanded to the superior court for further remand to the Commissioners with instructions to grant FLS Energy's application and issue a CUP to construct and operate a solar farm on their proposed site. *It is so ordered*.

REVERSED AND REMANDED.

Chief Judge MCGEE and Judge CALABRIA concur.