TYSON, Judge.
 

 *9
 
 Ecoplexus, Inc., Fresh Air Energy II, LLC, and Currituck Sunshine Farm, LLC ("Petitioners") appeal from an order affirming the decision of the Currituck County Board of Commissioners ("the Board") to deny Petitioners' application for a use permit to construct a solar energy array farm. We reverse and remand.
 

 *10
 

 I. Background
 

 Petitioners Currituck Sunshine Farm, LLC ("Currituck") and Ecoplexus, Inc. ("Ecoplexus") applied for a use permit on 11 December 2015, to construct a solar array farm on the vacant property that was previously used as Goose Creek Golf Course ("the property"), located at 6562 Caratoke Highway, Grandy, North Carolina. The golf course closed as a result of a foreclosure action in 2012 and has remained unused. Currituck owns the property, and Ecoplexus is a solar farm developer. Fresh Air Energy II, LLC ("Fresh Air") is the proposed tenant of the solar array farm to be developed.
 

 The property is located in an Agricultural ("AG") Zoning District. The Currituck County Unified Development Ordinance ("UDO") provides that a "solar array" is allowed as a permitted use on AG zoned land, subject to a use permit.
 

 The Currituck County Planning Staff and the Planning Board unanimously recommended the application for the permit to be approved, finding Petitioners' application fulfilled all the use permit review standards. On 4 April 2016, the Currituck County Board of Commissioners held a quasi-judicial hearing to consider Petitioners' use permit application.
 

 A. Evidence Presented by Petitioners
 

 Ecoplexus is a developer of solar energy farms, with projects located in five states, including ten projects within North Carolina. Nathan Rogers of Ecoplexus testified regarding the design of the proposed solar energy farm. He explained the solar panels would be arranged in rows and attached to metal racking, bringing the total height to 8 to 10 feet. To comply with the UDO's 300-foot setback requirements, the majority of the existing trees on the property would remain, with Ecoplexus filling in any gaps in the natural barrier with landscaping. Mr. Rogers opined that the solar farm would be harmonious with the surrounding properties. Concerning herbicide use, Mr. Rogers testified he preferred not to use herbicides, but did not rule out the possibility of future herbicide use.
 

 Tommy Cleveland, a licensed engineer specializing in solar energy in North Carolina, testified regarding the materials to be used. Solar panels are constructed of "very non-toxic" silicone-based cells, and the other components consist of glass, aluminum, and plastic.
 

 *152
 
 He testified the safety of these materials has been tested over the course of 25 to 30 years. Mr. Cleveland asserted there would be no emissions, and the electromagnetic field produced by the panels would be below international
 
 *11
 
 occupational hazard levels, and virtually non-existent at the perimeter of the property.
 

 Mr. Cleveland also testified solar facilities can be built to withstand hurricane force winds, and the proposed facility will be engineered to withstand winds of up to 120 mph. Because of the overall safety of solar farms, Mr. Cleveland testified there would be no negative health or safety impacts to the neighboring properties or the community from the installation of this solar energy system.
 

 Rich Kirkland, a certified and MAI designated appraiser, testified regarding the impact of the proposed solar farm on the valuation of the surrounding properties. Mr. Kirkland stated he has visited over 170 solar farms in North Carolina, and testified that over 90 percent of properties adjoining solar farms in North Carolina are located "where homes and fields meet," between agricultural and residential areas.
 

 Regarding the aesthetics of the proposed site, Mr. Kirkland testified the 400 foot average buffer from the proposed location of the solar panels to nearby homes is greater than the 150 foot average commonly observed in other projects across North Carolina. With the large setback buffer from the homes in the area and the natural vegetative barrier, Mr. Kirkland opined the property is a harmonious location for a solar farm.
 

 Mr. Kirkland also conducted a "matched pair" analysis of four other solar farm projects. In those properties, he opined no effects were shown on either the sale or value of surrounding properties. Mr. Kirkland predicted a similar outcome for the proposed facility, and opined the construction of the solar farm would not negatively impact surrounding property values.
 

 Kim Hamby, a North Carolina licensed engineer with 20 years of experience in water management, testified regarding the surface water, impoundments, and drainage on the property. Several ponds from the golf course would be filled in to construct the solar farm. Ms. Hamby testified sufficient drainage would be provided to make up for filled ponds. The new drainage system would be installed before the ponds are filled in, and the larger existing ponds will remain along the perimeter of the property. Further, the proposed solar farm would reduce the impervious surfaces of the property and leave plenty of land to manage and absorb surface water effectively. Ms. Hamby testified the drainage plan would be submitted for review and approval by the county engineers and the North Carolina Department of Environmental Quality. Plaintiffs assert this evidence, taken together, establishes a
 
 prima facie
 
 case of entitlement to the use permit.
 

 *12
 

 B. Evidence Presented by Respondents
 

 Herb Eckerlin, a professor in mechanical and aerospace engineering at North Carolina State University, testified regarding the overall problems he sees with solar energy. Dr. Eckerlin expressed concern with the high cost of energy in places such as California and Germany, but stated his testimony was based upon internet research. He also took issue with the legislative decision to allow only twenty percent of the value of a solar farm to be taxed, and opined Currituck County would see very little economic or tax benefit from allowing a solar farm to be approved.
 

 Dr. Eckerlin opined that the actual number of panels or type of panels installed in solar farms would be different from what was stated in the application, and there was no local or state oversight available to address such problems. He believes all solar farm construction should cease until these issues are addressed.
 

 Ron Heiniger, a professor in the crop, soil, and environmental science department at North Carolina State University, testified regarding the holding ponds. Holding ponds are important to maintain and control nutrient runoff from the property, and protect the surrounding environment. Dr. Heiniger asserted these holding ponds were important for containing the pesticides and herbicides applied when the property was used as a golf course, and opined this same purpose would
 
 *153
 
 be necessary for the proposed solar farm. He testified the federal government does not allow solar farms to be located on property owned by the United States Department of Agriculture ("USDA") in North Carolina, though he conceded a solar farm would not be in harmony in a national forest or park, which is the use of the majority of USDA-owned land located in North Carolina.
 

 Bruce Sauter, a certified appraiser, testified regarding the highest and best use for the property. He had appraised Goose Creek Golf Course in 2012, prior to the foreclosure action, and concluded the highest and best use of the property would be single family homes. Mr. Sauter opined the proposed solar farm would not be harmonious with the surrounding residential community, but asserted that harmonious use is the same as highest and best use. He questioned Mr. Kirkland's opinions on land value, as Mr. Kirkland's evaluation did not consider properties in the eastern part of the state. Mr. Sauter opined it was too early to tell how land and home values would be affected in Currituck County by solar farms.
 

 Steve Fentress, a resident of Grandy Road, testified and expressed his concerns about the proposed project. He questioned whether the amount of on-site fill would be enough to fill in the ponds, and was
 
 *13
 
 concerned about drainage on adjoining properties as a result of filling in the ponds. Mr. Fentress argued solar farms are an industry, and should be regulated under industrial use. He also testified as to the lack of inspections at other nearby, established solar farms, and communicated the need for such inspections, especially concerning the joining of metals from the panel to the frame.
 

 Laura Darden, an adjoining property owner, testified regarding the current water drainage issues. One of the existing retention ponds from the defunct golf course is located near her property, and every time it rains, she states it overflows onto her property. She asserted that at least fifty percent of her property was underwater at the time of the hearing, and she was concerned that changes resulting from constructing the solar farm would only make flooding on her property worse.
 

 C. Procedural Outcome
 

 The Board denied Petitioners' application for a use permit for failure to comply with the Use Permit Review Standards in an order dated 2 May 2016. The Board found the proposed solar farm (1) would endanger the public health or safety, (2) would not be in harmony with the surrounding area, and (3) would not be in conformity with the 2006 Land Use Plan.
 

 On 31 May 2016, Petitioners filed a petition for writ of certiorari, seeking review of the Board's decision in the superior court. The superior court upheld the Board's decision in an order dated 23 March 2017. Petitioners appeal.
 

 II. Jurisdiction
 

 Jurisdiction lies in this Court from a final order of the superior court pursuant to N.C. Gen Stat. § 7A-27(b) (2015).
 

 III. Issues
 

 Petitioners argue the superior court erred by affirming the Board's decision because: (1) their application for a use permit was supported by competent, substantial, and material evidence; (2) they made a
 
 prima facie
 
 showing entitling them to the use permit; and, (3) the Board's denial was not supported by competent, substantial, and material evidence, and its decision was arbitrary and capricious.
 

 IV. Standard of Review
 

 "A legislative body such as the Board, when granting or denying a conditional use permit, sits as a quasi-judicial body."
 

 *14
 

 Sun Suites Holdings, LLC v. Bd. of Aldermen of Town of Garner
 
 ,
 
 139 N.C. App. 269
 
 , 271,
 
 533 S.E.2d 525
 
 , 527,
 
 disc. review denied
 
 ,
 
 353 N.C. 280
 
 ,
 
 546 S.E.2d 397
 
 (2000).
 

 "The Board's decisions 'shall be subject to review of the superior court in the nature of certiorari.' "
 
 Dellinger v. Lincoln Cty.
 
 , --- N.C. App. ----, ----,
 
 789 S.E.2d 21
 
 , 26 (quoting N.C. Gen. Stat. § 160A-381(c) (2015) ),
 
 disc. review denied
 
 ,
 
 369 N.C. 190
 
 ,
 
 794 S.E.2d 324
 
 (2016). "In reviewing the Commissioners' decision, the superior court sits as an appellate court, and not as a trier of facts."
 

 *154
 

 Innovative 55, LLC v. Robeson Cty.
 
 , --- N.C. App. ----, ----,
 
 801 S.E.2d 671
 
 , 675 (2017) (citation and quotation marks omitted). Under the scope of its review, a superior court may only determine whether:
 

 1) the [b]oard committed any errors in law; 2) the [b]oard followed lawful procedure; 3) the petitioner was afforded appropriate due process; 4) the [b]oard's decision was supported by competent evidence in the whole record; and 5) [whether] the [b]oard's decision was arbitrary and capricious.
 

 Overton v. Camden Cty.
 
 ,
 
 155 N.C. App. 391
 
 , 393,
 
 574 S.E.2d 157
 
 , 159 (2002) (alterations in original) (quoting
 
 Capital Outdoor, Inc. v. Guilford Cty. Bd. of Adjustment
 
 ,
 
 152 N.C. App. 474
 
 , 475,
 
 567 S.E.2d 440
 
 , 441 (2002) (citation omitted)).
 

 This Court's review of the superior court's order "is limited to determining whether the superior court applied the correct standard of review, and to determine whether the superior court correctly applied that standard."
 
 Overton
 
 ,
 
 155 N.C. App. at 393-94
 
 ,
 
 574 S.E.2d at 160
 
 .
 

 "When a party alleges the Board of Commissioners' decision was based upon an error of law, both the superior court, sitting as an appellate court, and this Court reviews the matter
 
 de novo
 
 , considering the matter anew."
 
 Dellinger,
 
 --- N.C. App. at ----,
 
 789 S.E.2d at 26
 
 (citation omitted). When the petitioner argues the Board's decision is arbitrary and capricious, this Court applies the whole record test.
 

 Id.
 

 "The whole record test requires that the trial court examine all competent evidence to determine whether the decision was supported by substantial evidence."
 
 Morris Commc'ns. Corp. v. Bd. of Adjustment of Gastonia
 
 ,
 
 159 N.C. App. 598
 
 , 600,
 
 583 S.E.2d 419
 
 , 421 (2003) (citation omitted).
 

 V. Analysis
 

 Petitioners argue the Board improperly denied their application for a use permit, as their application was supported by competent, substantial,
 
 *15
 
 and material evidence. Petitioners assert this
 
 prima facie
 
 showing entitles them to a use permit under the standards in the UDO, and the opponents of the solar farm did not present competent or material evidence sufficient to overcome or rebut this
 
 prima facie
 
 showing. We agree.
 

 A. Petitioners'
 
 Prima Facie
 
 Showing
 

 "When an applicant for a conditional use permit produces competent, material, and substantial evidence of compliance with all ordinance requirements, the applicant has made a
 
 prima facie
 
 showing of entitlement to a permit."
 
 Howard v. City of Kinston
 
 ,
 
 148 N.C. App. 238
 
 , 246,
 
 558 S.E.2d 221
 
 , 227 (2002) (citation and quotation marks omitted). "Material evidence is '[e]vidence having some logical connection with the facts of consequence or the issues.' "
 
 Dellinger
 
 , --- N.C. App. at ----,
 
 789 S.E.2d at 27
 
 (quoting Black's Law Dictionary 638 (9th ed. 2009). "Substantial evidence is evidence a reasonable mind might accept as adequate to support a conclusion."
 
 Humane Soc'y of Moore County v. Town of S. Pines
 
 ,
 
 161 N.C. App. 625
 
 , 629,
 
 589 S.E.2d 162
 
 , 165 (2003) (citation and quotation marks omitted).
 

 While the applicant must make an initial, or
 
 prima facie
 
 , showing of compliance, "[t]o hold that an applicant must first anticipate and then prove or disprove each and every general consideration would impose an intolerable, if not impossible, burden on an applicant for a conditional use permit. An applicant need not negate every possible objection to the proposed use."
 
 Woodhouse v. Bd. of Comm'rs of Town of Nags Head
 
 ,
 
 299 N.C. 211
 
 , 219,
 
 261 S.E.2d 882
 
 , 887-88 (1980) (citation and quotation marks omitted).
 

 Solar energy arrays are expressly scheduled as a permitted use in property zoned AG under section 4.1.2 of the Currituck County UDO, subject to a use permit. Section 2.4.6 of the UDO, "Use Permit Review Standards" provides:
 

 A use permit
 
 shall be approved
 
 on a finding the applicant demonstrates the proposed use will:
 

 (1) Not endanger the public health or safety;
 

 (2) Not injure the value of adjoining or abutting lands and will be in harmony with the area in which it is located;
 

 *155
 
 (3) Be in conformity with the Land Use Plan or other officially adopted plan.
 

 (4) Not exceed the county's ability to provide adequate public facilities, including but not limited to, schools, fire
 
 *16
 
 and rescue, law enforcement, and other county facilities. Applicable state standards and guidelines shall be followed for determining when public facilities are adequate. (Emphasis supplied).
 

 The Planning Board unanimously found Petitioners had met their burden under section 2.4.6 of the UDO as to the first three standards, and that standard (4) was not at issue in this case.
 

 Petitioners then presented competent, material, and substantial lay and expert testimony to the Board to show: (1) solar panels are safe and generate no toxic emissions, and the proposed solar farm will be able to withstand winds up to 120 mph; (2) the proposed solar farm will not adversely affect surrounding property values, and, due to natural and supplemental vegetation buffers and setbacks, will be in harmony with the surrounding area; and, (3) the proposed project complies with the Land Use Plan as a full service sub-area.
 

 B. Board's Denial of Petitioners'
 
 Prima Facie
 
 Showing
 

 "Once an applicant makes [a
 
 prima facie
 
 ] showing, the burden of establishing that the approval of a conditional use permit would endanger the public health, safety, and welfare falls upon those who oppose the issuance of the permit."
 
 Howard
 
 ,
 
 148 N.C. App. at 246
 
 ,
 
 558 S.E.2d at 227
 
 . If after presentation of rebuttal evidence a board denies the application, the denial must be "based upon findings which are supported by competent, material, and substantial evidence appearing in the record."
 

 Id.
 

 After presentation of Petitioners' and opponents' evidence, the Board concluded the proposed solar energy farm:
 

 1) Will endanger the public health or safety because:
 

 a. The applicant ... did not adequately address water drainage to ensure that the amount of water that needs to vacate the property will be able to do so safely without negative impact to adjoining properties....
 

 b. There is significant disparity with the amount of material that is available on the site for backfilling the ponds and ... [backfilling] will create an additional drainage issue....
 

 c. Testimony ... relative to the use of chemicals on the property, specifically herbicides is unspecified as to the use and amount. Without some limitation ... it is going to be excessive and present a health
 
 *17
 
 hazard to those around it.
 

 2) Will not be in harmony with the area in which it is located because:
 

 a. Expert testimony from Mr. Sauter indicates a solar farm is not the highest and best use of the property, is not in harmony with adjacent neighborhoods, and provides stark contrast to the adjacent subdivision.
 

 3) Will not be in conformity with the 2006 Land Use Plan because:
 

 a. It is a large facility being reverted or being used in a manner that would not be conducive in a full service district because this district is intended for community centers that include a diversity of housing types and clusters of businesses to serve the immediate area.
 

 ....
 

 d. The use is not consistent with POLICY ID9 which states the county shall not support the development of energy producing facilities within its jurisdiction. e. The use is not consistent with POLICY CD6 which states that appropriate office and institutional developments ... be encouraged to locate as a transitional land use between residential areas and commercial. A solar array is classified as an institutional use, but ... is not an appropriate transitional use.
 

 The Board's decision must include and be based upon all of the Petitioners' evidence, or lack thereof, to show a
 
 prima facie
 
 case.
 
 See
 

 Innovative 55
 
 , --- N.C. App. at ----,
 
 801 S.E.2d at 676
 
 . The denial cannot be based on evidence solely presented by the opponents to the solar farm, the Board's own personal opinions, or by no evidence at all.
 
 See
 
 id.
 

 *156
 
 "Speculative and general lay opinions and bare or vague assertions do not constitute competent evidence" to overcome an applicant's
 
 prima facie
 
 showing.
 

 Id.
 

 at ----,
 
 801 S.E.2d at 678
 
 .
 

 Speculative assertions, mere expression of opinion, and generalized fears about the possible effects of granting a permit are insufficient to support the findings of a quasi-judicial body. In other words, the denial of a conditional
 
 *18
 
 use permit may not be based on conclusions which are speculative, sentimental, personal, vague, or merely an excuse to prohibit the requested use.
 

 Howard
 
 ,
 
 148 N.C. App. at 246
 
 ,
 
 558 S.E.2d at 227
 
 (citation and internal quotation marks omitted).
 

 Regarding finding 1) a. and b., the Board wholly ignored Petitioners' expert testimony on water management, and solely considered lay witnesses' testimony of their speculative fears of worsening floods due to the present state of storm water drainage and management on adjacent properties. Even if true, this flooding is based upon current conditions from the defunct golf course and not due to conditions or uses proposed by Petitioners. Further, Petitioners asserted their desire not to use herbicides. Very little testimony addressed the use of chemicals on the property. It appears this finding is based on the generalized fear of the Board, as no competent evidence in the record supports the finding of hazardous levels of herbicide use. Finding 1) is not supported by competent, material, and substantial evidence to rebut Petitioners'
 
 prima facie
 
 showing, but is merely based on generalized and speculative fears and concerns.
 
 See
 
 id.
 

 Similarly, the Board erred in regards to finding 2), by only considering testimony of opponents and ignoring the expert testimony offered by Petitioners. Mr. Sauter did not present any value impact evidence of properties surrounding solar farms, but merely stated his opinion on the impact on surrounding properties. Mr. Kirkland presented data relating to the value of properties around existing solar farms. Finding 2) erroneously equates "harmonious use" with "highest and best use" after Mr. Sauter conceded that the use need not be "the highest and best use" to be "harmonious." This finding is not based on competent, material, and substantial evidence to rebut Petitioners'
 
 prima facie
 
 case.
 

 It does not appear the Board used any record evidence to support its finding 3) that a solar farm is an incompatible use. Mr. Fentress, a lay witness, asserted his belief that solar farms are an industrial use, in contradiction to the Currituck County UDO specifically designating solar arrays as an appropriate and permitted use in agricultural areas, subject to a use permit. General assertions criticizing solar farms by lay witnesses do not rise to the level of competent, material, and substantial evidence to overcome the prior legislative determination to allow solar arrays as a permitted use in agricultural areas, after meeting permit requirements.
 
 Blair Invs., LLC v. Roanoke Rapids City Council
 
 ,
 
 231 N.C. App. 318
 
 , 325,
 
 752 S.E.2d 524
 
 , 530 (2013). Further, no other
 
 *19
 
 evidence in the record supports the Board's five findings that a solar energy farm is an incompatible land use.
 

 The Planning Board unanimously found Full Service areas "are those parts of the county where a broad range of infrastructure and service investments have been provided." They found and recommended the proposed solar energy farm will be harmonious in a Full Service district, and supports two specific policies of the Land Use Plan as adopted by the County Commission:
 

 a.
 
 POLICY ED1:
 
 New and expanding industries and businesses should be especially encouraged that: 1) diversify the local economy, 2) train and utilize a more highly skilled labor force, and 3) are compatible with the environmental quality and natural amenity-based economy of Currituck County.
 

 b.
 
 POLICY ID1
 
 Provide industrial development opportunities for cluster industries identified by Currituck Economic Development such as defense aero-aviation, port and maritime related industries,
 
 alternative energy
 
 , agriculture and food, and local existing business support. (Emphasis supplied).
 

 *157
 
 In contrast, the Board found the proposed solar energy farm violated Policy ID9, which states, "Currituck County shall not support the exploration or development of ENERGY PRODUCING FACILITIES within its jurisdiction including, but not limited to, oil and natural gas wells, and associated staging, transportation, refinement, processing or on-shore service and support facilities." The Board points to Policy ID9 as evidence a solar farm, as an "energy producing facility," does not conform to the 2006 Land Use Plan.
 

 While a solar farm could be considered an "energy producing facility," the examples listed in ID9: "oil and natural gas wells and associated staging, transportation, refinement, processing or on-shore service and support facilities," are distinctly different than a solar energy farm, which is clearly a form of "alternative energy." Further, the Land Use Plan clearly indicates prior legislative support for "cluster industries identified by Currituck Economic Development such as ... alternative energy."
 

 These prior legislative findings by the Board of Commissioners clearly refute the Board's findings at bar, which are not supported by competent, material, and substantial evidence, that the proposed use would not be in conformity with a Full Service area and would be an "energy producing facility." The Planning Board's recommendations also
 
 *20
 
 reflect the current permitted developments in Currituck County, which contains two previously approved solar energy farms.
 

 Without competent, material, and substantial evidence to overcome Petitioners'
 
 prima facie
 
 showing to support its findings, it appears the Board relied on generalized lay concerns, speculation, and "mere expression of opinion" and improperly denied Petitioners' use permit application after Petitioners had made a
 
 prima facie
 
 showing of entitlement to the use permit.
 
 See
 

 Howard
 
 ,
 
 148 N.C. App. at 246
 
 ,
 
 558 S.E.2d at 529
 
 .
 

 VI. Conclusion
 

 Based upon review of the whole record, Petitioners presented a
 
 prima facie
 
 showing of entitlement to their use permit to construct a solar energy farm in a zoning district where such facility is a permitted use. The Board's denial of the application was not based on competent, material, and substantial evidence to rebut the Petitioners'
 
 prima facie
 
 showing. "When a Board action is unsupported by competent substantial evidence, such action must be set aside for it is arbitrary."
 
 MCC Outdoor, LLC v. Town of Franklinton Bd. of Comm'rs
 
 ,
 
 169 N.C. App. 809
 
 , 811,
 
 610 S.E.2d 794
 
 , 796,
 
 disc. review denied
 
 ,
 
 359 N.C. 634
 
 ,
 
 616 S.E.2d 540
 
 (2005). The superior court's order affirming the Board's denial of Petitioners' application is reversed.
 

 This matter is remanded with instructions to the superior court to further remand to the Board to approve Petitioners' application. Upon remand, the Board may hear and require reasonable terms for the Petitioners to comply with the development standards, including Petitioners securing any required approvals of other local, state, and federal authorities' and agencies' permits required to operate the solar array energy farm.
 
 It is so ordered
 
 .
 

 REVERSED AND REMANDED.
 

 Judges CALABRIA and DAVIS concur.