An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored but may be permitted in accordance with the provisions of Rule 30(e)(3) of the *North Carolina Rules of Appellate Procedure*.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-108

Filed 17 June 2026

Pender County, No. 22CVS001029-700

COASTAL PINE SOLAR, LLC, Petitioner/Plaintiff,

v.

PENDER COUNTY, Respondent/Defendant.

Appeal by Petitioner-Appellant from order entered 2 October 2023 by Judge Dawn M. Layton in Pender County Superior Court.  Heard in the Court of Appeals 11 June 2024.

> *Fox Rothschild, LLP, by Attorneys Kip D. Nelson, Thomas E. Terrell, Jr., and Sean T. Placey, for the petitioner-appellant.*
>
> *Womble Bond Dickinson (US) LLP, by Attorneys John C. Cooke and Carl W. Thurman, III, for the respondent-appellee.*
>
> *Phillip Jacob Parker, Jr., Stephen A. Woodson, Meghan N. Cook, and Stacy Revels Sereno, for North Carolina Farm Bureau Federation, Inc., amicus curiae.*

STADING, Judge.

This matter arises from the trial court's order affirming the Pender County Board of Commissioner's ("the Board") denial of Coastal Pine Solar, LLC's ("Petitioner") requested special use permit ("SUP").  Petitioner sought an SUP to

build a solar farm.  For the reasons below, we affirm the trial court's order upholding the decision of the Board.

## I.  Background

In 2022, Petitioner applied for an SUP to build a 2,360-acre solar farm in Pender County.  For the SUP to be issued, Petitioner had to produce evidence tending to show compliance with the SUP standards in the Unified Development Ordinance ("UDO").  If those certain standards are met, the UDO allows "Other Electric Power Generation" facilities in rural agricultural zoning districts.  Under the UDO, the following standards are required for approval:

(1)  the use requested is listed among the special uses in the district for which the application is made, or is similar in character to those listed in that district;

(2) the requested use will not impair the integrity or character of the surrounding or adjoining districts, nor adversely affect the safety, health, morals, or welfare of the community or the immediate neighbors of the property;

(3) the proposed use shall not constitute a nuisance or hazard;

(4) the requested use will be in conformity with the Pender County Land Use Plan and other official plans, or policies adopted by the Board of County Commissioners;

(5) adequate utilities, access roads, drainage, sanitation or other necessary facilities have been or are being provided;

(6) adequate measures have been or will be taken to provide ingress and egress to minimize traffic congestion on public roads;

(7) the special use shall conform to the applicable regulations of the district in which it is located; and

(8) the proposed use shall not adversely affect surrounding uses and shall be placed on a lot of sufficient size to satisfy the space requirements of said use.

At the Board's 19 September 2022 meeting, an evidentiary hearing was held in which Petitioner presented written materials, expert opinions, and witness testimony consisting of reports, scientific studies, facts, photographs, and other evidence. Petitioner gave the Board a binder detailing the solar farm project and provided an overview of its contents. Petitioner also brought six consultants to present information on various aspects of the solar farm, including the project's site plan, the health and safety of the project, the project's impact on the property value, the project's environmental impact, and the project's harmony and consistency with Pender County's Land Use Plan. Each consultant presented data, provided their professional opinion, and answered the Board's questions on the UDO standards and concerns related to the project. At the hearing, the consultants included a licensed civil engineer on regulatory compliance, a licensed electrical engineer on solar panel specifics, a licensed mechanical engineer on health and safety, an appraiser on market impact, a certified planner on land use consistency. Also, Petitioner presented a witness with experience about living next to a solar farm.

After Petitioner presented evidence, eight long-time landowners and farmers from the community provided testimony. They expressed concerns over the intended use for the land, aesthetics of the project, and current condition of the land's potential for water runoff problems. These witnesses also testified about the inequality between the energy industries and local farmers regarding land use under the wetland conservation compliance provisions of the 1985 Farm Bill.

The Board unanimously voted to deny Petitioner's application. The Board found that SUP standards one, two, and three were not met; but the Board did not address standards four through eight. On 30 November 2022, Petitioner appealed to Pender County Superior Court via a writ of certiorari under N.C. Gen. Stat. § 160D-1402. Petitioner also filed an action for a declaratory judgment under N.C. Gen. Stat. § 160D-1401 and moved for summary judgment on this claim. The trial court determined that "Petitioner . . . presented competent, material, and substantial evidence sufficient to establish a prima facie case" on the three SUP standards addressed by the Board. However, the trial court concluded that the witnesses "testifying in opposition to the SUP did not present sufficient competent, material, and substantial evidence to overcome the prima facie case established by Petitioner." Pursuant to N.C. Gen. Stat. § 160D-1402(k)(2), the trial court remanded the matter to the Board to address the remaining SUP standards—four through eight.

On remand, the Board considered Petitioner's SUP application for standards four through eight. On 24 July 2023, the Board denied Petitioner's application, reasoning that a prima facie burden had not been met for standards four, five, seven, and eight. The Board determined that standard four—conformity with the Pender County Land Use Plan—had not been met because the project was to be in a rural agricultural district rather than an industrial one. Concerning standard five—establishing that adequate utilities, access roads, drainage, sanitation, or other necessary facilities have been or are being provided—the Board determined that Petitioner did not establish that "adequate utilities, access roads, drainage or other necessary facilities" existed because none of the Petitioner's witnesses testified that nearby electrical transmission lines could handle the project's output or that efforts had been made to offset any potential water runoff resulting from clearing 2,300 acres of timberland. The Board also determined that standard seven—conformity with applicable regulations of the district—had not been satisfied because an adjoining landowner testified about a nearby solar farm built in similar soil that required pouring concrete to support the solar panels, which would prevent the land from future agricultural use. The Board last determined that standard eight—which related to the adverse effect on surrounding uses—had not been met because Petitioner's expert had not visited the project site, performed soil or water quality

tests, or verified whether the surrounding residents relied on well water to confirm that the presence of lead in the solar panels would impact nearby land or residential homes. Therefore, the Board issued a written order stating that Petitioner had not made a prima facie case and thus denied the SUP.

Petitioner appealed to the trial court via a writ of certiorari for review of the Board's denial of the SUP on standards four, five, seven, and eight. In its order dated 28 September 2023, the trial court affirmed the Board's decision denying the SUP. Applying de novo review, the trial court concluded that Petitioner "provided, and the record contains competent, material, and substantial evidence sufficient to establish [a] prima facie case as to the special use permit standard[s] four through eight." Next, the trial court "completed a whole record review," and concluded that the Board's decision to deny the SUP as to grounds four through eight was "supported by competent, material and substantial evidence that is contrary to [Petitioner]'s evidence." On 8 December 2023, the trial court entered a clarifying final judgment on all claims. Petitioner entered notice of appeal.

## II.     Jurisdiction

This Court has jurisdiction to consider this matter under N.C. Gen. Stat. § 7A-27(b)(1) (2025).

## III. Analysis

Petitioner presents three issues on appeal:[1] whether the trial court improperly substituted its own rationale for denying the application and applied the correct standard of review; whether the Board erred in denying the application by concluding that Petitioner failed to meet its prima facie case of entitlement; and whether the Board deprived Petitioner of its due process rights. We affirm the trial court's decision for the reasons outlined below.

### A. Standard of Review

When the governing body holds a hearing to consider an SUP application, "it acts in a quasi-judicial capacity." *Humble Oil & Refin. Co. v. Bd. of Aldermen*, 284 N.C. 458, 469, 202 S.E.2d 129, 136–37 (1974). The governing body members "sitting in a quasi-judicial capacity must base their decision to grant or deny a[n] [SUP] on objective factors, which are based upon the evidence presented, and not upon their

---

[1] On appeal, Petitioner attributes weight to the trial court's passing remark encouraging Petitioner to exercise their appellate rights. The trial court's observation that "I believe you will appeal this order and you should" is not indicative of the merits of the underlying claims. Instead, the trial court's remark is best understood to encourage Petitioners to exercise their rights. In any event, the trial court's remark does not affect our judgment or decision in this case as it is not a reflection on the substance of the issues now before this Court.

subjective preferences or ideas." *PHG Asheville, LLC v. City of Asheville*, 262 N.C. App. 231, 239, 822 S.E.2d 79, 85 (2018), *aff'd as modified*, 374 N.C. 133, 839 S.E.2d 755 (2020).

The governing body follows a two-step decision-making process in determining whether to grant or deny an application for an SUP:

> (1) If an applicant has produced competent, material, and substantial evidence tending to establish the existence of the facts and conditions which the ordinance requires for the issuance of a special use permit, prima facie he is entitled to it. (2) If a prima facie case is established, a denial of the permit then should be based upon findings contra which are supported by competent, material, and substantial evidence appearing in the record.

*Mann Media, Inc. v. Randolph Cty. Planning Bd.*, 356 N.C. 1, 12, 565 S.E.2d 9, 16 (2002) (citation modified).

"Every quasi-judicial decision shall be subject to review by the superior court by proceedings in the nature of certiorari pursuant to G.S. 160D-1402." N.C. Gen. Stat. § 160D-406(k) (2025). When reviewing a quasi-judicial decision via a petition for writ of certiorari, "the superior court sits as an appellate court, and not as a trier of facts." *Tate Terrace Realty Invs., Inc. v. Currituck Cnty.*, 127 N.C. App. 212, 217, 488 S.E.2d 845, 848 (1997). Upon appeal to the superior court:

> [T]he task of a court reviewing a decision on an application for a[n] [SUP] made by a town board sitting as a quasi-judicial body includes:

    (1)     Reviewing the record for errors in law,

    (2)     Insuring that procedures specified by law in both statute and ordinance are followed,

    (3)     Insuring that appropriate due process rights of a petitioner are protected including the right to offer evidence, cross-examine witnesses, and inspect documents,

    (4)     Insuring that decisions of town boards are supported by competent, material and substantial evidence in the whole record, and

    (5)     Insuring that decisions are not arbitrary and capricious.

*Coastal Ready-Mix Concrete Co. v. Bd. of Comm'rs*, 299 N.C. 620, 626, 265 S.E.2d 379, 383 (1980) (citation modified). The superior court's task is to review the evidence presented to the Board while acting in its quasi-judicial capacity. *Id.* In doing so, its standard of review "depends upon the particular issues presented on appeal." *Mann Media, Inc.*, 356 N.C. at 13, 565 S.E.2d at 17 (cleaned up).

"[I]f a petitioner contends the board's decision was based on an error of law, de novo review is proper." *Id.* (citation modified). Under de novo review, the court "considers the matter anew and freely substitutes its own judgment for the [local governing board's] judgment." *PHG Asheville, LLC*, 374 N.C. at 150, 839 S.E.2d at 766 (citation modified). But if a petitioner questions "(1) whether the agency's decision was supported by the evidence or (2) whether the decision was arbitrary or capricious, then the reviewing court must apply the 'whole record' test." *ACT-UP*

*Triangle v. Comm'n for Health Servs.*, 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997) (cleaned up). "The 'whole record' test requires the reviewing court to examine all competent evidence (the 'whole record') in order to determine whether the agency decision is supported by 'substantial evidence.' " *Id.* (quotation marks and citation omitted). Under whole record review, "[t]he reviewing court should not replace the [local governing board's] judgment as between two reasonably conflicting views; 'while the record may contain evidence contrary to the findings of the agency, this Court may not substitute its judgment for that of the agency.' " *SBA, Inc. v. City of Asheville City Council*, 141 N.C. App. 19, 27, 539 S.E.2d 18, 22 (2002) (citation modified).

Finally, this Court "examines the trial court's order for error of law. The process has been described as a twofold task: (1) determining whether the trial court exercised the appropriate scope of review, and if appropriate, (2) deciding whether the court did so properly." *ACT-UP Triangle*, 345 N.C. at 706, 483 S.E.2d at 392 (quotation marks and citation omitted); *Am. Towers, Inc.*, 222 N.C. App. at 641, 731 S.E.2d at 701 ("[W]e review *de novo* the initial issue of whether the evidence presented by petitioner met the requirement of being competent, material, and substantial. The town's ultimate decision about how to weigh that evidence is subject

to whole record review."). We therefore consider whether the trial court exercised and employed the proper standard of review.

## B.    Special Use Permit

### 1.    *The Trial Court's Standards of Review*

Petitioner argues that the trial court was requested to "address the basis for the County's decision," but in doing so, it instead impermissibly determined whether competent, material, and substantial evidence existed adverse to it.

"An applicant for a[n] [SUP] must establish a prima facie case, by competent, material, and substantial evidence, meeting all the conditions in the zoning ordinance." *PHG Asheville, LLC*, 262 N.C. App. at 238, 822 S.E.2d at 84 (citing *Humble Oil*, 284 N.C. at 467, 202 S.E.2d at 136). If an applicant has

> produced competent, material, and substantial evidence tending to establish the existence of the facts and conditions which the ordinance requires for the issuance of a special use permit, prima facie he is entitled to it. A denial of the permit should be based upon findings contra which are supported by competent, material, and substantial evidence appearing in the record.

*Humble Oil*, 284 N.C. at 468, 202 S.E.2d at 136.

As discussed, "we review *de novo* the initial issue of whether the evidence presented by petitioner met the requirement of being competent, material, and substantial." *Am. Towers, Inc.*, 222 N.C. App. at 641, 731 S.E.2d at 701. When "evidence [is] competent, material, and substantial, then [the] evidence [is]

necessarily 'sufficient' to make out a prima facie case." *PHG Asheville, LLC*, 262 N.C. App. at 240, 822 S.E.2d at 86. Likewise, it follows that we review de novo whether adverse competent, material, and substantial evidence appears in the record. *See Innovative 55, LLC v. Robeson Cnty.*, 253 N.C. App. 714, 719, 801 S.E.2d 671, 675 (2017) (citation modified) ("Whether competent, material and substantial evidence is present in the record is a conclusion of law, which is reviewed de novo."); *see also Am. Towers, Inc.*, 222 N.C. App. 638, 641, 731 S.E.2d 698, 701 (2012) (citation omitted) ("[W]e address both of these issues under de novo review."). From there, "[t]he [local governing board's] ultimate decision about how to weigh [the] evidence is subject to whole record review." *Id.* (citation omitted).

In its order, the trial court upheld the Board's denial of Petitioner's SUP request:

> 4. [A]fter completing a de novo review the Court finds that Coastal Pines Solar, LLC provided, and the record contains competent, material and substantial evidence sufficient to establish [a] *prima facie* case as to the special use permit standards four through eight of the Pender County Unified Development Ordinance. Specifically, Coastal Pine Solar LLC presented evidence in the form of voluminous written materials, expert reports, and testimony of five expert witnesses.
>
> 5. After completing a whole record review and not superseding the Pender County Board of Commissioners' judgment with the Court's, find that Pender County's decision to deny the special use permit application as to standards four, five, seven and eight is supported by

competent, material and substantial evidence that is
contrary to Coastal Pine Solar LLC's evidence.

The trial court also determined that the Board's decision was neither arbitrary and capricious nor in violation of Petitioner's due process rights.

Here, paragraph four of the trial court's order provides it reviewed de novo: (1) whether Petitioner adduced sufficient evidence to make a prima facie showing of entitlement; and (2) whether Petitioner's proposed use conformed with the UDO. Paragraph four demonstrates the trial court did not weigh the evidence; but properly applied de novo review to determine the initial legal issue of whether Petitioner had presented competent, material and substantial evidence. *See PHG Asheville, LLC*, 262 N.C. App. at 241, 822 S.E.2d at 86.

With respect to paragraph five, the trial court applied whole record review and found the Board's decision was supported by the evidence. Here, the trial court failed to indicate it used de novo review in considering whether adverse competent, material, and substantial evidence appeared in the record. In this particular case, however, the trial court's failure does not warrant remand. *See Schooldev E., LLC v. Town of Wake Forest*, 386 N.C. 775, 785, 909 S.E.2d 181, 190 (2024).

### 2. *The Trial Court's Application of the Standards of Review*

Our analysis next turns to whether the trial court *correctly applied* its standards of review upon affirming the Board's denial of Petitioner's SUP. Although

the trial court concluded Petitioner presented sufficient evidence to establish a prima facie case, Petitioner contends the trial court erred in determining denial was proper due to the existence of sufficient contrary evidence.

### a.    *Petitioner's Prima Facie Case of Entitlement*

The Board hears evidence, acts as a finder of fact, and follows "a two-step decision-making process in granting or denying an application for a special use permit." *Mann Media*, 356 N.C. at 12, 565 S.E.2d at 16.  First, the Board determines whether the "applicant has produced competent, material, and substantial evidence tending to establish the existence of the facts and conditions which the ordinance requires for the issuance of a special use permit . . . ." *Humble Oil*, 284 N.C. at 468, 202 S.E.2d at 136.  "Competent evidence is evidence that is relevant and admissible." *Schooldev E., LLC*, 386 N.C. at 783, 909 S.E.2d at 188 (citations omitted).  Material evidence is evidence having "some logical connection with the facts of the case or the legal issues presented." *Id.* (citations omitted).  Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted).  Accordingly, evidence must be "admissible, relevant to the issues in dispute, and sufficient to support the decision of a reasonable fact-finder." *Blair Invs., LLC v. Roanoke Rapids City Council*, 231 N.C. App. 318, 321, 752 S.E.2d 524, 527 (2013).  If "the applicant satisfies this initial burden of

production, then *prima facie* he is entitled to the issuance of the requested permit." *PHG Asheville, LLC*, 374 N.C. at 149, 839 S.E.2d at 766 (quotation marks and citation omitted). "At that point, any decision to deny the application should be based upon findings contra which are supported by competent, material, and substantial evidence appearing in the record . . . ." *Id.* (quotation marks and citation omitted).

Ultimately, employing de novo review, the trial court concluded Petitioner produced sufficient evidence to establish a prima facie case of entitlement. Having determined the trial court exercised the appropriate scope of review, our de novo review turns to whether Petitioner presented sufficient evidence to establish a prima facie case of entitlement with respect to the contested standards. *See ACT-UP Triangle*, 345 N.C. at 706, 483 S.E.2d at 392 (quotation marks and citation omitted).

### i.     *Standard Five*

Petitioner argues the Board incorrectly "determined that [it] failed to meet this standard because it did not use the word 'adequate' in its description of the power grid." SUP standard five requires Petitioner to adduce sufficient evidence of: "Adequate utilities, access roads, drainage, sanitation or other necessary facilities have been or are being provided[.]" At the SUP hearing, Petitioner proffered that water and sewer utilities, access roads, and sanitation facilities are unnecessary because of the unmanned nature of the solar project. Additionally, while standard five mentions "other necessary facilities," Petitioner asserted it was "unable to

provide any more information on this standard" given "the absence of a UDO or generally accepted definition of the term 'facilities[.]'" Nevertheless, Petitioner maintains the board "ignored the evidence provided by [it] on site drainage."

The Board's order provided the following findings of fact when denying Petitioner's SUP application:

1) <u>Criteria 5: Requires applicant to establish that adequate utilities, access roads, drainage, sanitation or other necessary facilities to serve the proposed use have been or are being provided.</u> While the attorney for the applicant noted that there was nearby electrical transmission lines, no witness for the applicant testified that the transmission line was adequate to transmit the industrial scale project proposed for the Parcel. Given that the applicant failed to present evidence that the current[ ] distribution lines could handle electricity produced, the applicant failed to make a prima facia case.

2) <u>Criteria 5 also requires sufficient drainage.</u> On 9/19/2022, the Pender Soil and Water Conservation Director testified the land subject to the application had been taken out of agricultural use due to it[s] designation by the State as "wetlands". There was no testimony from the applicant as to the remedial measures to be taken to offset the runoff potential to this project which would clear cut 2300 acres of timberland.

First, the Board found Petitioner failed to adduce sufficient evidence of existing adequate utilities "to serve the proposed use [that] have been or are being provided." Specifically, the Board found Petitioner "failed to present evidence that the current distribution lines could handle electricity produced" and "no witness for [Petitioner]

testified that the transmission line was adequate to transmit the industrial scale project proposed for the Parcel." When questioned about the adequacy of the transmission line, Petitioner provided:

> A solar farm's utility needs are different than other uses. Rather than needing access to electrical power, [the project] requires access to the power grid, which this site has through access to a 230 kilovolt transmission line that crosses the site. Beyond that, [the project] needs an adequate location to construct a substation where the current generated by the panels can be increased to the power level on the transmission lines and placed onto the grid.

Additionally, Petitioner's expert witness in electrical engineering, Chris Sandifer, testified that the necessary infrastructure required Duke Energy's interconnect equipment to be able to handle the electricity produced. Petitioner noted electricity would be "sent onto the local electric grid through a 'point of interconnection' at an existing transmission line at the property." According to Mr. Sandifer, the only remaining necessity would be substations, which would be constructed by Duke Energy. At best, Petitioner's evidence only established that there is no existing utility on site and they would need to involve Duke Energy to create an adequate "point of interconnection." Petitioner's reliance on the presence of two existing Duke 230 kV transmission lines by itself is not sufficient evidence to support a prima facie showing under standard five since those lines could not currently serve the property. *See, e.g., Ballas,* 121 N.C. App. at 347–50, 465 S.E.2d at 325–27 (holding the petitioner made a prima facie showing that "[a]dequate utilities, access roads, drainage and/or other

necessary facilities have been or are being provided" because the existing water and sewer facilities were currently serving the property.).  For these reasons, we conclude Petitioner failed to show that "[a]dequate utilities, . . . [and] other necessary facilities have been . . . provided[.]"  *See id.*

We next consider whether Petitioner adduced sufficient evidence that adequate utilities *are being* provided.  Along with the above evidence, Petitioner's expert's report stated: "This proposed project is adjacent to two existing Duke 230 kV transmission lines. A new substation and Duke switching station will be constructed to connect the project to the grid which it is interconnecting."  Testimony offered during the hearing provided: "the equipment is going to be that interconnects will be specified by Duke, paid for the by applicant, paid for by the project, and so the switch gear . . . . is not an unusual device for Duke."

Our review of the record reveals Petitioner failed to adduce sufficient evidence to make a prima facie showing that adequate utilities are being provided.  *See Schooldev E.*, 386 N.C. at 783, 909 S.E.2d at 188–89 (cleaned up) ("When considering permit applications in a quasi-judicial capacity, a local government board must determine whether the applicant has produced competent, material, *and* substantial evidence tending to establish the existence of the facts and conditions which the ordinance requires for the issuance of the requested permit.").  After careful review, we conclude Petitioner failed to adduce competent and substantial evidence.  *See id.* (citations omitted) ("Competent evidence is evidence that is relevant and

admissible. . . . Substantial evidence consists of 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' ").

First, Petitioner's evidence on whether adequate utilities are being provided was not competent evidence. *See id.* As to this point, we note that "*speculative* and general lay opinions and *bare or vague assertions* do not constitute competent evidence to overcome an applicant's prima facie showing." *Ecoplexus Inc. v. Cnty. of Currituck*, 257 N.C. App. 9, 17, 809 S.E.2d 148, 156 (2017) (citing *Innovative 55, LLC*, 253 N.C. App. at 723, 801 S.E.2d at 678) (cleaned up). While inquiries involving whether testimony is "speculative[,] . . . bare or vague" are typically addressed with respect to contrary evidence, both the prima facie case and contrary evidence require competent, material and substantial evidence. *Id.*; *see also Am. Towers, Inc.*, 222 N.C. App. at 641, 731 S.E.2d at 701; *see also e.g.*, *Innovative 55, LLC*, 253 N.C. App. at 723, 801 S.E.2d at 678; *Sun Suites Holdings, LLC*, 139 N.C. App. at 276, 533 S.E.2d at 530; *Howard v. City of Kinston*, 148 N.C. App. 238, 246, 558 S.E.2d 221, 227 (2002). As the denial of an SUP may not rest on "speculative[,] . . . bare or vague assertions" neither may the grant of an SUP. *Ecoplexus Inc.*, 257 N.C. App. at 17, 809 S.E.2d at 156; *see also Am. Towers, Inc.*, 222 N.C. App. at 641, 731 S.E.2d at 701 (citation modified) ("We must determine whether petitioner presented competent, material, and substantial evidence. If so, then petitioner has made out a prima facie case, and the permit must issue unless there was competent, material, and substantial

evidence to rebut petitioner's showing. Because whether competent, material and substantial evidence is present in the record is a conclusion of law, we address both of these issues under de novo review."). Indeed, we emphasize both the prima facie case and contrary evidence are subject to the same requirements and standards of competent, material and substantial evidence. *See Am. Towers, Inc.*, 222 N.C. App. at 641, 731 S.E.2d at 701. Accordingly, we conclude "speculative[,] . . . bare or vague assertions do not constitute competent evidence" for a prima facie case. *Ecoplexus Inc.*, 257 N.C. App. at 17, 809 S.E.2d at 156; *see also Am. Towers, Inc.*, 222 N.C. App. at 641, 731 S.E.2d at 701.

Applying this principle here, Petitioner's testimony that Duke Energy would be responsible for constructing a substation or point of interconnection according to Duke Energy's specifications, is a "speculative[,] . . . bare [and] vague assertion." *Ecoplexus Inc.*, 257 N.C. App. at 17, 809 S.E.2d at 156. While the UDO mandates that "[a]dequate utilities are being provided[,]" the record lacks any evidence that Duke Energy is actually providing these utilities and whether such utilities would be "adequate." Moreover, Petitioner did not present evidence tending to show whether the existing transmission lines are compatible with Duke Energy's requirements. While Mr. Sandifer testified that "interconnects will be specified by Duke[,]" this statement does not amount to competent or substantial evidence of compliance with the UDO's specifications. Without more, a mere assertion that Duke Energy will construct the necessary adequate utilities is no more than a "speculative[,] . . . bare

[and] vague assertion." *Id.* Likewise, these assertions do not amount to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[ ]" that adequate utilities "are being provided." *Schooldev E.*, 386 N.C. at 783, 909 S.E.2d at 188–89. For these reasons, we hold Petitioner failed to adduce competent and substantial evidence as to standard five.

Since Petitioner failed to establish a prima facie case of compliance with standard five, we need not consider the remaining SUP standards. *See Mann Media*, 356 N.C. at 17, 565 S.E.2d at 19 (holding the reviewing court need not address other requirements when one essential element is not met). Our de novo review concludes the Board properly denied Petitioner's SUP application since they failed to satisfy their burden of production.

### C. Due Process

Petitioner asserts that the Board violated established law and deprived it of due process. Petitioner's due process argument claims explicit and implicit bias of the Board and its commissioners. First, Petitioner argues, "[o]ne commissioner, after the public hearing was closed and moments before the vote, explicitly admitted that he had ex parte communications with 'a lot of' individuals prior to the hearing." Second, Petitioner contends, at the first hearing, "[a]nother commissioner implicitly admitted having ex parte communications" by repeatedly asking questions about the use of concrete in the soil to support solar panels.

As an initial matter, we note Petitioner did not present its claims of bias to the Board, which historically precluded such an argument. *See JWL Invs., Inc. v. Guilford Cnty. Bd. of Adjustment*, 133 N.C. App. 426, 430, 515 S.E.2d 715, 718 (1999) (overruling due process argument because "[t]he petitioners did not object during the hearing to this member's presence on the Board."). After 2021, however, *JWL Invs., Inc.* has been partially superseded by N.C. Gen. Stat. § 160D-1402(i)(2) (2025) ("A failure to object at a hearing by a person with standing . . . shall not constitute a waiver of a right to assert impermissible conflict involving a member of the decision-making board."). Accordingly, we address Petitioner's arguments in turn.

Chapter 160D of the North Carolina General Statutes concerns local planning and development regulation. *See* N.C. Gen. Stat. § 160D-101 *et seq*. (2025). Subsection 160D-109(d) provides, "[a] member of any board exercising quasi-judicial functions . . . shall not participate in or vote on any quasi-judicial matter in a manner that would violate affected persons' constitutional rights to an impartial decision maker." *Id*. § 160D-109(d) (emphasis added). To be sure, N.C. Gen. Stat. § 160D-109(d) enumerates several violations of due process, including "undisclosed ex parte communications." *Id*.

In this context, an ex parte communication would generally involve a prohibited communication between one of the members of the decision-making board

and an interested party (or their attorney) to the matter, to the exclusion of an adversely interested party (or their attorney). *See ex parte*, *adv.*, Black's Law Dictionary (12th ed. 2024) ("On or from one party only[.]"); *see also ex parte*, *adj.*, Black's Law Dictionary (12th ed. 2024) ("Done or made at the instance and for the benefit of one party only, and without notice to, or argument by, anyone having an adverse interest[.]"); *see also ex parte communication*, Black's Law Dictionary (12th ed. 2024) ("A communication between counsel or a party and the court when opposing counsel or party is not present."). Also in this context, "there is a presumption of honesty and integrity in those serving as adjudicator on a quasi-judicial tribunal." *In re N. Wilkesboro Speedway, Inc.*, 158 N.C. App. 669, 675, 582 S.E.2d 39, 43 (2003) (citation modified). And "to prove bias, it must be shown that the decision-maker has made some sort of commitment, due to bias, to decide the case in a particular way." *Dellinger v. Lincoln Cnty.*, 266 N.C. App. 275, 280–81, 832 S.E.2d 172, 178 (2019) (citation omitted).

With respect to Petitioner's first contention, the commissioner stated:

> I just disagree with what Commissioner Newton just said in regard to everything she said in regards to the farmer. I've heard from a lot of them the last couple of days myself, and I certainly – the attorney has shared with us several times the rules and regulations regarding special use. Perhaps he didn't think we knew that, but we do. And so I think this is a great example of something that's is not a good fit for our [rural agricultural zoning district]

Commissioner Newton just alluded to. Thank you, everybody.

Here, Petitioner's position requires us to make assumptions not demonstrated in the record before this Court. Petitioner has failed to carry its burden of establishing that an ex parte communication occurred on account of the commissioner's statement he "heard from a lot of them." *See Hope v. Charlotte-Mecklenburg Bd. of Educ.*, 110 N.C. App. 599, 603, 430 S.E.2d 472, 474 (1993) (citing *Taborn v. Hammonds*, 83 N.C. App. 461, 472, 350 S.E.2d 880, 887 (1986)) ("To decide that these facts alone are sufficient to establish bias or unfair prejudice would amount to a per se rule of unconstitutionality, completely disregarding the presumption that the Board acted correctly and the presumption of honesty and integrity in those serving as adjudicators."). Further, without more, this statement does not illustrate the necessary commitment to show bias and overcome the strong presumption of honesty and integrity. *See Dellinger*, 266 N.C. App. at 280–81, 832 S.E.2d at 178 (citation omitted); *see also, e.g.*, *Vulcan Materials Co. v. Guilford Cnty. Bd. of Cnty. Comm'rs*, 115 N.C. App. 319, 325, 444 S.E.2d 639, 643 (1994) ("although the record contains some comments which indicate that certain members of the Board were going to vote to deny the special use permits, these comments were made after evidence was presented, and there is no evidence in the record which discloses that

any Board member had made a fixed decision, prior to the hearing, to vote against granting the special use permits.").

Similarly, with respect to Petitioner's second contention, the commissioner's line of questioning does not demonstrate bias. Petitioner points to questions related to the use of concrete in soil and argues this line of questioning reveals the occurrence of ex parte communications because, while unprompted, it closely resembled the later testimony from a witness's personal experience. Petitioner then surmises "[t]he only reasonable conclusion is that the commissioner had spoken with and was influenced by this particular opponent prior to the hearing . . . . without publicly disclosing those communications." However, Petitioner's argument again rests on assumptions we cannot make, namely, assuming an ex parte communication occurred merely because a commissioner's line of questioning shared similarities with the testimony of a witness. Without more, Petitioner has not demonstrated sufficient evidence that the questions, which were relevant, reflected impropriety. *See Dellinger*, 266 N.C. App. at 280–81, 832 S.E.2d at 178. Instead, consistent with the presumption of honesty and integrity, the commissioner's questions about the usage of concrete likewise reflect an inquiry related to the satisfaction of the UDO. *See id.*

Moreover, "[t]he distinction between pre-hearing knowledge and bias is key." *In re Application Raleigh*, 107 N.C. App. at 514, 421 S.E.2d at 184. "The mere fact

that a decision maker enters a hearing with knowledge of the subject matter of the hearing does not lead necessarily to the conclusion that the decision maker's mind is closed to evidence and set as to the final result." *Id*. Thus, even if the commissioner had acquired knowledge about the use of concrete in the soil for some solar projects, this alone does not necessarily lead to impermissible bias. *See id*. In fact, the commissioner brought this knowledge to Petitioner's attention to allow it an opportunity to respond, which it did. A comprehensive review of the record reveals there is insufficient evidence to overcome the presumption of honesty and integrity. Accordingly, Petitioner's due process argument is overruled.

## IV. Conclusion

The record shows that Petitioner failed to meet the mandatory standards to establish a prima facie entitlement to the requested SUP. Therefore, the Board properly denied the SUP. Thus, the superior court ultimately did not err in affirming the Board's decision. And after careful review of the record, Petitioner's due process argument is overruled.

AFFIRMED.

Judge MURRY concurs.

Judge STROUD concurs in result only.

Report per Rule 30(e).